612 A.2d 421

Calvin ALSTON and Dorothy M. Alston, Appellants,

v.

ST. PAUL INSURANCE COMPANIES,

and

John T. Williams, M.D.,

and

Vocational Rehabilitation Services, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1992.

Decided June 17, 1992.

Reargument Denied Aug. 28, 1992.

262

Joseph Lurie, Albert B. Gerber, Philadelphia, for appellant.

Andrew J. Gallogly, Philadelphia, for St. Paul Ins. Co.

Joseph R. Rydzewski, Paul A. Barrett, Scranton, for Vocational Rehabilitation Services, Inc.

Kevin J. Ruane, Philadelphia, for Janet Rohrer.

David P. Rovner and Jack T. Ribble, Jr., for John T. Williams, M.D.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

The issue presented in this appeal is whether an employee who sustains an injury covered by the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq., may assert a separate tort action for injuries allegedly arising out of malicious and fraudulent conduct and abuse of the legal process to terminate workmen's compensation benefits by agents of the employer's insurance carrier. Based upon our decision in *Kuney v. PMA Insurance Company*, 525 Pa. 171, 578 A.2d 1285 (1990), we conclude that the exclusivity provisions of the Workmen's Compensation Act prohibit a tort action against the agents of the insurance carrier for injuries allegedly caused by their actions in handling the employee's compensation claim.

This is an appeal from an order of the Superior Court affirming the order of the Delaware County Court of Common Pleas granting summary judgment in favor of St. Paul Insurance Companies, Vocational Rehabilitation Services, Inc., and John T. Williams, M.D. We granted allocatur limited to the issue stated above as it relates to individuals or entities acting on behalf of an employer or the employer's insurance carrier.

On April 24, 1981, Appellant Calvin Alston fell while working on a ladder and sustained injuries to his wrists, spine, neck and back. St. Paul Insurance Companies (St. Paul), the workmen's compensation insurance carrier, assigned Alston's file to Robert Dunham, a claims examiner. Alston began receiving total disability benefits.

St. Paul later contracted with Appellee Vocational Rehabilitation Services, Inc. (Vocational Services) to obtain Alston's medical records, to monitor his recovery, and to report to St. Paul. On January 7, 1982, Edward Resnick, M.D., an orthopedist, examined Alston as requested by Vocational Services. Dr. Resnick reported that his examination did not reveal any significant findings that could be causally related to the symptoms complained of, or to the injury of April 24, 1981. He stated that there was a strong possibility of chronic pain syndrome, but reserved his final opinion until X-rays could be examined. Alston had refused to allow Dr. Resnick to take any X-rays.

In February, 1982, Vocational Services assigned Alston's file to an employee, Appellee Janet Rohrer, a "rehabilitation nurse". Alston was evaluated and treated in February, March, and April, 1982, by J. Brendon Wynne, D.O. Dr. Wynne indicated to Rohrer that he was unable to calculate a firm date on which Alston could return to work. After Rohrer reported Dr. Wynne's findings to St. Paul, a decision was allegedly made to institute a more aggressive approach toward Alston.

Rohrer arranged to meet with Alston and his wife on May 14, 1982, to discuss his medical treatment and prognosis. At that time, Rohrer indicated that she would like to schedule an appointment for Alston with John T. Williams, M.D., whom

she allegedly described as a "miracle worker". Alston agreed to be examined.

On August 31, 1982, Alston was examined by Dr. Williams. Alston alleged that he was not informed that an independent medical examination would occur, or that Dr. Williams had the ability to sign a physician's affidavit of recovery, or that he was entitled to have his own physician accompany him to the examination. Dr. Williams conducted a brief examination. Without review of Alston's prior medical records, X-rays, or contact with the treating physician, Dr. Williams told Alston that he was able to return to work.

Dr. Williams executed a physician's affidavit of recovery. Subsequently, Robert Dunham approached Alston to negotiate a lump sum settlement of his workmen's compensation benefits. Alston rejected the offer as insufficient. St. Paul then filed a petition to terminate Alston's benefits.

Alston's benefits were discontinued for nineteen months, until St. Paul's petition to terminate was denied. The benefits were reinstated and attorney's fees were awarded to Alston. St. Paul appealed the referee's decision to the Workmen's Compensation Appeal Board. The underlying decision was affirmed, but the award of attorney's fees was reversed on the Board's finding of a reasonable contest. No appeal was taken from the Board's order.

On July 6, 1984, the Alstons initiated the trespass action for compensatory and punitive damages from St. Paul, Vocational Services, and Dr. Williams. Ms. Rohrer was joined as an additional defendant by Vocational Services. The essence of the Alstons' claim is the allegation that the defendants conspired to and made misrepresentations to the Alstons to defraud them of workmen's compensation benefits.

A motion for summary judgment was filed on behalf of the Appellees. In their motion, the Appellees relied upon the Superior Court's decision in *Rosipal v. Montgomery Ward*, 360 Pa.Super. 570, 521 A.2d 49 (1987), alloc. granted, 516 Pa. 635, 533 A.2d 93 (1987), appeal dismissed, 517 Pa. 460, 538 A.2d 495 (1988), holding that an employee's tort action against her employer was barred by the exclusivity provision of the

Workmen's Compensation Act. The trial court granted the summary judgment motion.

On appeal, the Superior Court affirmed. The Superior Court held that the legal immunity that is afforded to employers and their compensation insurers under the exclusivity provisions of the Workmen's Compensation Act extends not only to acts of negligence, but also to claims based on intentional, wanton and willful misconduct. Citing its decision in *Rosipal*, supra, the Superior Court concluded that the immunity extended to cover civil tort actions arising from the handling of a workmen's compensation claim.

In *Rosipal*, the plaintiff was injured while performing her duties as a security guard. The employer filed a notice of compensation payable and initiated wage indemnity payments. The employer later filed a petition for termination that was supported by a physician's affidavit of recovery. The plaintiff's benefits were reinstated following a hearing before a referee.

The plaintiff brought a civil action against her employer, alleging economic duress, intentional infliction of emotional distress, procuring a false affidavit of recovery, and breach of compensation agreement. The employer filed preliminary objections, asserting that it was immune from the action under the Workmen's Compensation Act. The trial court dismissed the preliminary objections, but the Superior Court granted the employer's petition for review and reversed.

The Superior Court stated that the Workmen's Compensation Act barred all civil actions flowing from work-related injuries. In rejecting the argument that the injury did not arise from a work-related accident, the Superior Court reasoned that without a work-related accident, there would have been no workmen's compensation proceedings out of which the civil action arose. The Superior Court concluded that the plaintiff had failed to state a cause of action as all of the allegations in her complaint had as the ultimate basis an injury compensable under the Workmen's Compensation Act, and her claims must be considered within its framework.

The Superior Court expanded on its analysis in *Rosipal* in the instant case. The court held that when employees sustain injuries during the course of their employment, because of an intentional wrongdoing by their employer, the employee's exclusive remedy for the injury itself, or for the handling of the claim, lies within the framework of the Workmen's Compensation Act. The Superior Court concluded that the administrative remedies established therein are the exclusive remedies for claimants who believe that their benefits have been wrongfully suspended or terminated by the workmen's compensation insurer. The Superior Court applied this analysis as well to those individuals or entities employed by the insurer to review the case, such as Vocational Services and Dr. Williams.

Subsequent to the Superior Court's decision in the instant case, we addressed the issue of whether an employer's immunity from tort actions under the Workmen's Compensation Act protects its insurance carrier if the insurer is alleged to have engaged in fraud and deceit to deprive an injured employee of his worker's compensation benefits. In *Kuney v. PMA Insurance Co.*, 525 Pa. 171, 578 A.2d 1285 (1990), we held that the employer's immunity from tort actions of injured workers extended to the insurance carrier in such instances. We now conclude that our holding in *Kuney* also encompasses those individuals or entities who perform or assist in performing the functions of the insurance carrier in handling workmen's compensation claims as agents or employees of the carrier.

In *Kuney,* the employee filed a claim petition after sustaining an injury during his employment. The employer's insurance carrier, PMA, refused to pay any benefits despite its alleged knowledge that he was entitled to compensation. He was awarded total disability benefits by a referee. The referee also awarded interest on the past-due compensation and ordered the insurance carrier to pay the employee's litigation expenses and counsel fees. PMA appealed and continued to withhold payment, allegedly in order to impose extreme financial hardship on the employee.

The employee filed a civil action against PMA for damages sustained as a result of PMA's handling of his compensation claim. Preliminary objections filed by PMA were sustained by the trial court on the basis that the employee's sole remedy was provided by the Workmen's Compensation Act. The Superior Court reversed.[1] *Kuney v. PMA,* 379 Pa.Super. 598, 550 A.2d 1009 (1988). We granted allocatur and reversed the order of the Superior Court.

We stated that the exclusivity clause of the Workmen's Compensation Act, 77 P.S. § 481(a), reflects the historical quid pro quo between an employer and employee whereby the employer assumes liability without fault for a work-related injury, but is relieved of the possibility of a larger damage verdict in a common law action. The employee benefits from the expeditious payment of compensation, but forgoes recovery of some elements of damages. An employer's liability and the liability of its compensation carrier are exclusively governed by the Workmen's Compensation Act.

In analyzing whether the employee's claim arising out of the allegedly fraudulent handling of his compensation benefits was subject to the exclusive remedies of the Workmen's Compensation Act, we examined the penalty provisions established therein. We concluded that "... the comprehensive system of substantive, procedural, and remedial laws comprising the workmen's compensation system should be the exclusive forum for redress of injuries in any way related to the work place." *Kuney,* 525 Pa. at 175–176, 578 A.2d at 1287, citing *American Casualty Co. v. Kligerman,* 365 Pa. 168, 172, 74 A.2d 169, 172 (1950). We held that an employee's claim that the insurance carrier wrongfully delayed payment of benefits must be considered within the framework of the statute.

We find that our decision in *Kuney* is dispositive of the issue raised in the instant case. The Appellant attempts to distinguish this case from *Kuney* on the basis that the defendant was not a physician or vocational rehabilitation service,

---

1. The Superior Court's decision in *Kuney* was explicitly overruled in its later decision in the instant case. See, *Alston v. St. Paul, et al.,* 389 Pa.Super. 396, 567 A.2d 663 (1989).

and that no penalties are prescribed in the Workmen's Compensation Act for third parties. This attempted distinction blatantly disregards the agency relationship existing between the insurance carrier and the vocational rehabilitation service and physician.

As in *Kuney*, the crux of the Alstons' lawsuit is that the insurance carrier and its agents wrongfully delayed the receipt of compensation benefits. The Workmen's Compensation Act establishes the exclusive forum for resolving disputes regarding the employee's right to compensation and the delay or discontinuance of benefits. The workmen's compensation system encompasses all disputes over coverage and the payment of benefits, whether they arise from actions taken by the employer, the employer's insurance carrier, or the insurance carrier's employees or agents. Only the employer or the employer's insurance carrier may seek to terminate an employee's benefits. Therefore, it is of no significance that no penalties are prescribed for the employees or agents of the insurance carrier, for such penalties are available against the employer or its insurance carrier.

The order of the Superior Court is affirmed.

CAPPY, J., files a concurring opinion.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

CAPPY, Justice, concurring.

I concur in the result offered in the majority opinion. I write separately to express my dissatisfaction with the majority decision in *Poyser v. Newman & Company, Inc.* 514 Pa. 32, 522 A.2d 548 (1987), from which *Kuney v. PMA Insurance Co.*, 525 Pa. 171, 578 A.2d 1285 (1990) and now, the decision *sub judice*, emanate.

In *Poyser*, a clear majority of this Court, in interpreting the language of the Workmen's Compensation Act, determined that an employee was barred from suing an employer whose *intentional* tortious conduct had harmed the employee. The majority opined that the employee's exclusive remedy was

workmen's compensation. On the other hand, the Act itself provides that an employee may sue a fellow employee for an *intentional* tort under the "personal animus" exception to the exclusivity provision of the Act. *Dolan v. Linton's Lunch,* 397 Pa. 114, 152 A.2d 887 (1959); 77 P.S. § 411(1)[1] Thus the "personal animus" exception to the exclusivity provision of the Act is incongruous with the holding in *Poyser;* the same employee could not sue his employer if the employer had committed the identical intentional tort against him, that a co-employee had committed.

In my view, the dissent filed by Mr. Justice Larsen and joined by Mr. Justice Papadakos in *Poyser,* which emphasized the fact that the Workmen's Compensation Act was intended to provide exclusive remedies for employer negligence and not intentional tortious acts committed by that same employer, is the preferred interpretation. Had I been a member of this Court at that time, I would have joined Mr. Justice Larsen.

However, the view expressed by Mr. Justice Larsen failed to gain majority support, and *Poyser* stands as the law of Pennsylvania. From *Poyser, Kuney v. PMA Insurance Co.,* 525 Pa. 171, 578 A.2d 1285 (1990) naturally follows, to wit: since an employer cannot be held independently accountable to the employee for the employer's intentional tortious acts, neither can the employer's compensation insurance carrier. Under the *Poyser* reasoning, it would be ludicrous to immunize the employer and not his compensation insurance carrier.

Today, the majority takes the next logical step in the chain which began with the *Poyser* rationale. If employers, their

---

1. Since the Act was written in order to resolve issues as between employer and employee, it is only rational that the legislature would have to explicitly except intentional tortious conduct of fellow employees since one could not expect an employer to bear the consequences of an intentional act of a fellow employee unless the employer in some way directly facilitated the intentional tortious conduct. It seems to me that there was no commensurate need to specifically exempt intentional tortious conduct of the employer since, as Mr. Justice Larsen aptly notes, "... the purpose of this kind of legislation was to restrict the remedy available to an employee against the employer to compensation, and to close to the employee, and to third parties, any recourse against the employer in tort for *negligence.*" *Kline v. Arden H. Verner Co.,* 504 Pa. 251, 254–255, 469 A.2d 158, 159–660 (1983). (emphasis his).

compensation carriers and the carriers' agents and employees are immune, a fortiori, the compensation carriers' independent contractors [2] are also immune. To hold otherwise, in light of the *Poyser* reasoning, would not only be inconsistent, but also contradictory, since the legislature has not seen fit to explicitly grant the right for an employee to sue either compensation insurance carriers or their agents.

I believe that this is an instance where the logical extension of a well intentioned interpretation may lead not only to absurdity but also to injustice. Nevertheless, absent corrective legislation, for now, *Poyser* remains the law of Pennsylvania and, as in the *Kuney* case, the case *sub judice* falls squarely within its ambit. For that reason alone, I am constrained to join in the result offered by the majority.

LARSEN, Justice, dissenting.

The majority holds that an employer's immunity from the tort actions of injured workers under the Workmen's Compensation Act extends not only to the employer's compensation insurance carrier but also to "those individuals or entities who perform or assist in performing the functions of the insurance carrier in handling workmen's compensation claims as agents or employees of the carrier," who commit intentional, active fraud and deceit upon the employees in order to deprive them of workmen's compensation benefits. In fact, these alleged "agents or employees" are independent contractors. I believe that the Workmen's Compensation Act should not provide for such far reaching immunity and, therefore, should not bar this action. Accordingly, I dissent.

In *Poyser v. Newman & Company, Inc.,* 514 Pa. 32, 40, 522 A.2d 548, 552 (1987), the majority held that the Workmen's Compensation Act does not preserve "the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing [in that t]here is no such provision in

---

**2.** I note that Mr. Justice Zappala categorizes the Vocational Rehabilitation Service and Dr. Williams as "agents" of the compensation insurance carrier, using a generalized concept of agency. However, I agree with Mr. Justice Larsen's designation of these two appellees as independent contractors.

The Pennsylvania Workmen's Compensation Act." *Poyser* at 514 Pa. 38, 522 A.2d at 551. However, in my dissent to *Poyser* (joined by Papadakos, J.), I pointed out that " 'the purpose of this kind of legislation [the Workmen's Compensation Act] was to restrict the remedy available to an employee against the employer to compensation, and to close to the employee, and to third parties, any recourse against the employer in tort *for negligence.*' *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 254–55, 469 A.2d 158, 159–160 (1983) (emphasis added)." Subsequently, in *Kuney v. PMA Insurance Co.,* 525 Pa. 171, 578 A.2d 1285 (1990), the majority expanded *Poyser* so as to preclude the right to sue in tort for the intentional wrongdoing of the employer's compensation insurance carrier, which of necessity includes the insurance carrier's employees and agents. In my dissent to *Kuney* (joined by Papadakos, J.), I stated that an employee should not be barred by the Workmen's Compensation Act from maintaining an action in trespass for the separate injury he has incurred at the hands of the employer's compensation insurance carrier.

Now, the majority is extending the bar against intentional tort actions to the employer's compensation insurance carriers' independent contractors. This is a first in Pennsylvania: independent contractors of independent contractors having the immunity of the principal. The underlying purpose of the Act is not served by extending immunity to such attenuated extremes. If the majority remains on its present course, everyone will be immune from liability, and the injured employee will have no remedy whatsoever—no matter how intentional or despicable the act that caused the injury.

Accordingly, I would reverse the order of the Superior Court, affirming the grant of appellees' motion for summary judgment and remand for further proceedings.

PAPADAKOS, J., joins in this dissenting opinion.