613 A.2d 1235

**Luis SANTIAGO and Laura Santiago, Appellants,**

**v.**

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued April 8, 1992.

Filed Aug. 20, 1992.

Stephen M. Older, Philadelphia, for appellants.

Michael P. McKenna, Philadelphia, for appellee.

Before McEWEN, CIRILLO and CERCONE, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Montgomery County granting the defendant/Pennsylvania National Mutual Casualty Insurance Company's preliminary objections and dismissing the complaint filed by plaintiffs Luis and Laura Santiago, husband and wife. We affirm.

Luis Santiago was employed as a Quality Control Technician at United Contamination Control. On October 13, 1986,

Santiago suffered a work-related injury to his left wrist. He was diagnosed as having a ganglion cyst on his wrist. After surgery was performed upon his wrist, Santiago began a physical therapy program. Santiago received weekly disability benefits pursuant to the Workmen's Compensation Act [the Act],[1] and continues to receive these benefits.

As a result of his injury, Luis Santiago developed a psychiatric condition known as Reflex Sympathetic Dystrophy (RSD). In his complaint, Luis Santiago alleges that RSD is usually caused by a direct injury to a nerve and is accompanied by varying "psychological and psychiatric conditions" including emotional instability, anxiety, and social withdrawal. Santiago sought psychiatric care in 1987. In September of 1989, Santiago left his wife in order to deal with his condition outside the pressures of marriage.

Since 1987, Santiago's psychiatric reports have indicated depression and chronic suicidal thoughts, apparently aggravated by Santiago's physical pain, his inability to work, and his sense of frustration and helplessness. On several occasions, beginning in July of 1989, Santiago was hospitalized for psychiatric care.

Santiago's employer maintained workmen's compensation insurance coverage through Pennsylvania National Mutual Casualty Insurance Company [Pennsylvania National]. Pennsylvania National paid for Santiago's psychiatric treatment until August of 1989, at which time Pennsylvania National terminated payment. As a result of termination of payment for psychiatric care, Santiago filed a claim petition with the Workmen's Compensation Bureau on February 26, 1990. This petition is currently pending before Workmen's Compensation Referee Carol A. Mickey.

In their complaint, Mr. and Mrs. Santiago allege that Thomas Murray [Murray] of Ringler Associates, Inc., informed their counsel, Robert H. Black, Esq., [Black] that he had been "commissioned by the Defendant [Pennsylvania National] to work out a structured settlement for wages for Plaintiff, Luis

1.  77 P.S. §§ 1 *et seq.*

Santiago." (Complaint, ¶ 46). Black and Murray entered into settlement negotiations in February of 1990. Negotiations continued for approximately three weeks.

> During all times relevant hereto, Murray was acting as an authorized agent ... of Defendant and had informed Black that he had authority to settle the wage claim. During the negotiating period ... Murray presented several offers made by Defendant for proposed settlements concerning Plaintiff, Luis Santiago's wages, but at no time discussed the issue of psychiatric bills.... At the end of the negotiating period ... Plaintiff, Luis Santiago, accepted an offer made by Defendant. Black informed Murray that the proposed settlement was acceptable to Plaintiff. Murray reconfirmed to Black that he had authority to settle, that he had full approval from Defendant and that he would begin final paperwork on the settlement. Black informed Plaintiff that the settlement ... had been reached and would be final, subject to the approval of the Court. Soon thereafter, [Michelle] Baker represented to Black that Murray did not have authority to settle, and therefore, the settlement agreement ... would not be acceptable to Defendant unless plaintiff would voluntarily agree to waive any claim for present and future psychiatric treatment.

(Complaint, ¶¶ 47–51).

Black advised Santiago of the terms of the agreement and Santiago accepted the settlement offer. Thereafter, Black was advised by Pennsylvania National's representative, Michelle Baker, Esq., that Murray did not have authority to settle the claim and that Pennsylvania National would honor the agreement only if Santiago agreed to the waiver. Santiago believed this condition rendered the agreement impracticable, and Black informed Pennsylvania National that Santiago was unable to accept the offer with this condition.

In March of 1990, Santiago sought emergency medical care at Lower Bucks Hospital for the pain in his arm. While there, Santiago attempted to hang himself behind a door to an empty room. As a result of attempting to take his own life, Santiago was immediately admitted to Montgomery County Emergency

Services for psychiatric care. He was discharged approximately one month later. In his discharge summary, Dr. Oscar D. Saldana noted that Santiago

> claim[ed] that all his emotional problems would not exist if it weren't for the excruciating pain he felt continuously on his left shoulder.... His depression seems to have lasted for at least four years following the accident that gave way to his present medical condition.

Luis and Laura Santiago filed this action against Pennsylvania National. Santiago alleges that the suicide attempt was the result of exacerbated depression caused by the collapse of the anticipated settlement agreement with Pennsylvania National. Luis Santiago alleged fraud, misrepresentation, negligent infliction of emotional distress and intentional infliction of emotional distress. He also alleges that Baker's representations that Murray lacked authority to settle the claim were made with the intent to deceive Santiago, and that the insurance carrier exhibited bad faith in the handling of this claim. Santiago requested punitive damages for Pennsylvania National's bad faith conduct. Laura Santiago claimed loss of consortium.

Pennsylvania National filed preliminary objections to the complaint. The Honorable Joseph A. Smyth sustained the objections and dismissed the complaint. On appeal, the issue presented is whether the trial court erred in finding the causes of action alleged were barred by the exclusive remedy provisions of the Pennsylvania Workmen's Compensation Act. We are presented with the question of whether a plaintiff may assert causes of action sounding in intentional tort against a worker's compensation insurance carrier based upon the improper handling of a worker's compensation claim. The parties do not dispute the principle that worker's compensation is the employee's sole remedy and that under section 303(a) of the Act, 77 P.S. § 481(a), the employer is statutorily protected from common law tort claims. Further, the parties do not dispute that the employers' immunities and protections under the exclusivity provision of the Act extend to the compensation

insurance carrier.[2] The confusion arises in the wake of the Pennsylvania Supreme Court's decision in *Martin v. Lancaster Battery Co. Inc., et al.,* 530 Pa. 11, 606 A.2d 444 (1992), and its effect, if any, on the application of the exclusivity provision in an action against the compensation insurance carrier when the carrier is acting, as Santiago alleges in his complaint, in bad faith and with the intent to deceive.

In an appeal from an order sustaining preliminary objections in the nature of a demurrer, the appellate court applies the same standard employed by the trial court; all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Guinn v. Alburtis Fire Co.,* 134 Pa.Cmwlth. 270, 577 A.2d 971 (1990); *Kyle v. McNamara & Criste,* 506 Pa. 631, 487 A.2d 814 (1985).

In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. *Ohio Casualty Group Ins. Co. v. Argonaut Ins. Co.,* 92 Pa.Cmwlth. 560, 500 A.2d 191 (1985). A preliminary objection should be

**2.** Employer immunity from tort liability has been extended to worker's compensation insurers:

Every employer liable under the act to pay compensation shall insure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company ... authorized to insure such liability in this Commonwealth.... *Such insurer shall assume the employer's immunities and protection hereunder ....*

77 P.S. § 501 (emphasis added). *See Jadosh v. Goeringer,* 442 Pa. 451, 275 A.2d 58 (1971) (employer's workmen's compensation insurer was included within term "employer" as used in immunity provisions of Workmen's Compensation Act and shares employer's immunity from common-law liability); *see also Brown v. Travelers Insurance Co.,* 434 Pa. 507, 254 A.2d 27 (1969) (listing policy considerations indicating the legislature's intent that the insurance carrier would share in the employer's immunity).

sustained only where it appears with certainty that, upon the facts averred, the law will not allow the plaintiff to recover. *International Union of Operating Engineers, Local No. 66, AFL-CIO v. Linesville Construction Co.,* 457 Pa. 220, 322 A.2d 353 (1974).

Under the Pennsylvania system of fact pleading, the pleader must define the issues; every act or performance essential to that end must be set forth in the complaint. *See* Pa.R.C.P. 1019; 4 Standard Pennsylvania Practice § 21:32; *see also Pike County Hotels Corporation v. Kiefer,* 262 Pa.Super. 126, 396 A.2d 677 (1978) (at a minimum, the pleader must set forth facts upon which his cause of action is based). When ruling on preliminary objections, a court must generally accept as true all well and clearly pleaded facts, but not the pleader's conclusions or averments of law. *See* 5 Standard Pennsylvania Practice § 25:8. *See also Keirs v. Weber National Stores, Inc.,* 352 Pa.Super. 111, 507 A.2d 406 (1986).

Santiago argues that Pennsylvania National initiated settlement negotiations and had knowledge of his fragile psychological state. He further claims that through Murray's representations, and later through Baker's representations that Murray had no authority, he was induced to settle his claim on less than favorable terms. Additionally, Santiago avers that Pennsylvania National knew or should have known that the breakdown in the settlement agreement would aggravate his condition. Santiago seeks redress for injuries which he claims he suffered as a result of Pennsylvania National's fraudulent and bad faith conduct, conduct which is outside the scope of the Act, for which the Act provides *no remedy,* and which resulted in aggravating his work-related injury.

Santiago argues that the injuries averred in his complaint are not work-related and did not arise in the course of his employment. Santiago contends, therefore, that this sufficiently places his claim outside of the scope of the Act, and that he consequently should be entitled to pursue this common law claim against the carrier. We cannot agree.

■  The Workmen's Compensation Act [the Act] is the sole and exclusive means of recovery against employers for all injuries arising out of accidents occurring within the course of employment.  77 P.S. § 481(a).[3]  The exclusivity provision of the Workmen's Compensation Act essentially "bars tort actions flowing from any work-related injury."  *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 256, 469 A.2d 158, 160 (1983).  *See also Alston v. St. Paul Ins. Companies*, 389 Pa.Super. 396, 401, 567 A.2d 663, 666 (1989), *affirmed*, 531 Pa. 261, 612 A.2d 421 (1992).

In *Alston, supra,* a plurality of this court[4] held that the employer's workmen's compensation insurer was entitled to the same immunity from suit as the employer in an action involving the processing of the compensation claim.  Alston was injured and his employer's compensation insurance carrier, St. Paul Insurance Companies (St. Paul) began paying benefits.  St. Paul contracted with Vocational Services to obtain Alston's medical records and monitor his recovery.  Janet Rohrer, a rehabilitation nurse employed by Vocational Services, met with Alston and indicated that she would schedule an appointment for Alston to meet with John T. Williams, M.D., whom she characterized as a "miracle worker."  *Id.*, 389 Pa.Superior Ct. at 397, 567 A.2d at 664.

Dr. Williams examined Alston, without the benefit of Alston's medical records or x-rays, and told Alston that he was ready to return to work.  Dr. Williams notified Ms. Rohrer that he would sign an affidavit of recovery.  Having secured

3.  Section 481(a) provides in part:
    The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employe, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (1) or occupational disease as defined in section 108.
    77 P.S. § 481(a).

4.  The lead opinion authored by President Judge Cirillo was joined by Judges Olszewski, Tamilia and Popovich.  Judge Johnson and Judge Rowley filed dissenting statements in which Judge Melinson joined.  Judge Brosky filed a concurring and dissenting statement.  Judge McEwen did not participate in the decision.

an affidavit of recovery, St. Paul approached Alston regarding a lump sum settlement of his compensation benefits. Alston rejected the offer as insufficient and St. Paul filed a petition to terminate benefits. Alston's benefits were discontinued for nineteen months, at which time a referee denied St. Paul's petition. Alston's benefits were reinstated and he was awarded counsel fees. On appeal, the W.C.A.B. affirmed the benefits award but reversed the award of attorney's fees on its finding of "reasonable contest." *Id.*

Alston filed a civil action against St. Paul, Vocational Services, and Dr. Williams, alleging in his complaint that the defendants engaged in a course of tortious conduct through which they conspired to fraudulently deny Alston's benefits due under the Act. Alston alleged that this conspiracy was advanced by the defendants' negligent and intentional misrepresentations. *Id.* Summary judgment was granted in favor of the defendants and this court affirmed, stating: "The legal immunity which is afforded to employers and their compensation insurers extends not only to acts of negligence, but also to claims based on intentional, wanton and willful misconduct, such as those advanced in the case before us today." *Id.,* 389 Pa.Superior Ct. at 403, 567 A.2d at 667. *See also Rosipal v. Montgomery Ward,* 360 Pa.Super. 570, 573–74, 521 A.2d 49, 50–51 (1987), *allocatur granted* 516 Pa. 635, 533 A.2d 93 (1987), *appeal dismissed* 517 Pa. 460, 538 A.2d 495 (1988) ("In the absence of the injury, there would have been no workmen's compensation proceedings out of which the instant civil action arose.... The appellee has failed to state a cause of action in her complaint as all of the allegations have as the ultimate basis an injury compensable under the Workmen's Compensation Act and her claims must be considered within the framework of the Act.")

An appeal was taken to the Pennsylvania Supreme Court, which affirmed. The Court that held the exclusivity provisions of the Workmen's Compensation Act "prohibit a tort action against the agents of the insurance carrier for injuries allegedly caused by their actions in handling the employee's compensation claim." *Alston,* 531 Pa. at 262, 612 A.2d at 421. The Court also stated that its holding in *Kuney* "encompasses

those individuals or entities who perform or assist in performing the functions of the insurance carrier in handling workmen's compensation claims as agents or employees of the carriers." *Id.* at 423. "An employer's liability and the liability of its compensation carrier are exclusively governed by the Workmen's Compensation Act." *Id.* at 424.

Here, as in *Alston,* the action was brought against the employer's compensation carrier for tortious conduct in the course of handling the worker's compensation claim. In both cases the plaintiffs sought compensatory and punitive damages for negligent and intentional misrepresentation, and in both cases the actions were dismissed on the basis of the exclusivity provisions of the Act. A distinction does exist with respect to the "lump sum" settlement negotiations in each case. In *Alston,* the settlement offer was refused as insufficient, prompting the carrier to file a petition to terminate benefits and providing the basis for Alston's claim. Here, the settlement offer was initially accepted but later rejected when a waiver was added to the terms of the agreement, prompting a weakening of Santiago's psychological health and his attempt at suicide, and forming the basis of Santiago's claim. We are unable to discern a significant distinction between the action precluded in *Alston* and that precluded by Judge Smyth in this case. However, the supreme court decided *Martin* in the interim, and we must determine whether *Martin* affects the application of the exclusivity provision in this case.

In *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548 (1987), our supreme court held that the exclusivity provision bars a common law action against an employer to recover damages for an intentional tort. The court stated:

> The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon section 303(a) of the Act [77 P.S. § 481(a) ] an exception the legislature did not see fit to put in.

*Id.,* 514 Pa. at 38, 522 A.2d at 551. This reasoning was reiterated in *Barber v. Pittsburgh Corning Corp.,* 521 Pa. 29, 555 A.2d 766 (1989): "This Court has never acknowledged or

recognized [an intentional tort] exception to the exclusivity provisions of our workmen's compensation statute." *Id.*, 521 Pa. at 37, 555 A.2d at 771. In *Martin, supra,* the Pennsylvania Supreme Court held that where an employee alleges fraudulent misrepresentation on the part of the employer which caused an aggravation of a work-related injury, the employee is not barred from pursuing a common law claim against the employer. An employer is not insulated under the Act for "flagrant misconduct." *Martin,* 606 A.2d at 448. The employer in *Martin* was charged with the responsibility of monitoring the level of lead in the employee's blood. The employer intentionally withheld and altered Martin's blood test results, causing aggravation of Martin's injury and resulting in his common law claim against Lancaster Battery. Refusing to apply the exclusivity provisions of the Act, our supreme court reasoned that certain actions amounting to flagrant misconduct were never intended to fall within the protections and immunities of the Act:

> Clearly, when the Legislature enacted the Workmen's Compensation Act in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to coverage provided by the Workmen's Compensation Act. There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

*Martin,* 606 A.2d at 448; *see also McGinn v. Valloti,* 363 Pa.Super. 88, 525 A.2d 732 (1987), *alloc. denied,* 517 Pa. 618, 538 A.2d 500 (1988) (employee's allegations that defendant's intentional fraudulent misrepresentation that she would be fired from her job if she sought independent medical advice was outside the scope of the protection guaranteed the employer under the Worker's Compensation Act).

We interpret our supreme court's holding in *Martin* and its order denying allocatur in *Valloti* as allowing a limited excep-

tion to the application of the exclusivity provisions of the Act. We are reluctant, however, to extend that exception to the circumstances in this case. In both *Martin* and *Valloti*, the employer concealed, altered, or intentionally misrepresented information related to the work-related injury which resulted in aggravation of the injury. Neither case concerned the improper handling of the claim on the part of the employer's carrier, as was the case here and in *Alston, supra*. This, too, was the case in *Kuney v. PMA Insurance Co.*, 525 Pa. 171, 578 A.2d 1285 (1990).

In *Kuney*, the Pennsylvania Supreme Court addressed an issue similar to the one before us: whether an employer's immunity from tort actions, guaranteed by the Pennsylvania Workmen's Compensation Act, protects the employer's insurance carrier if it is alleged that the carrier engaged in fraud and deceit to deprive an injured employee of his compensation benefits. Kuney sustained an injury on the job and sought benefits from PMA, his employer's compensation insurance carrier. PMA contested the claim. A referee determined that Kuney's injury was a compensable work-related injury and that he was entitled to total disability benefits. The referee also determined that PMA had no reasonable basis to contest the claim, and therefore awarded Kuney interest on all past-due compensation, litigation expenses, and counsel fees. PMA appealed the referee's decision to the Workmen's Compensation Appeal Board [W.C.A.B.]. The W.C.A.B. reversed in part, concluding that PMA did have a reasonable basis to contest the claim. Kuney appealed, and the Commonwealth Court reversed the decision of the WCAB and reinstated Kuney's award. *Kuney v. Workmen's Compensation Appeal Board*, 127 Pa.Cmwlth. 628, 562 A.2d 931 (1989).

During this time, Kuney instituted a civil action against PMA, seeking damages for injuries allegedly sustained as a result of PMA's fraudulent mishandling of his claim. PMA filed preliminary objections. The trial court sustained the objections on the basis that Kuney's sole remedy for the injuries stemming from PMA's conduct was provided in the Act. A panel of this court reversed, *Kuney v. PMA Ins. Co.*,

379 Pa.Super. 598, 550 A.2d 1009 (1988), and held that the Act did not provide immunity from civil actions where the claimant alleged the insurer acted in bad faith in refusing the claim and that the injuries suffered as a result of the insurer's conduct were separate and apart from the work-related injury.

The Pennsylvania Supreme Court reversed the panel's decision, explaining that the Act provided for specific remedies for the injuries Kuney had alleged, including ten percent interest on due and unpaid compensation, 77 P.S. § 717.1, as well as for penalties up to ten percent for violations of the act, for violations of rules and regulations promulgated thereunder, or for violations of rules of procedure. The Act further provides that penalties may be increased to twenty percent in cases of unreasonable or excessive delay. 77 P.S. § 991. Moreover, the statute allows attorneys fees and costs to be assessed against an insurer which contests a compensation claim without a reasonable basis. *Kuney,* 525 Pa. at 175, 578 A.2d at 1287.

Quoting *Kline v. Arden H. Verner Co.,* 307 Pa.Super. 573, 576, 453 A.2d 1035, 1036 (1982), *aff'd* 503 Pa. 251, 469 A.2d 158 (1983), our supreme court stated:

> When an employee sustains injuries which bring him within the Workmen's Compensation Act, the amount he is to be compensated depends upon the provisions of the Act. That compensation is his exclusive remedy. Its exclusivity is not destroyed and the employee does not acquire additional remedies merely because the provisions of the Act fail to provide what he deems to be adequate or full compensation for injuries sustained.

525 Pa. at 175, 578 A.2d at 1287.

For actions claiming fraud in the carrier's handling of the compensation claim, the Act provides remedial provisions. *See* 77 P.S. §§ 701–797. In *Kuney,* the Pennsylvania Supreme Court relied heavily upon the fact that the Act itself provided remedies for the injuries Kuney alleged to have suffered as a result of PMA's fraudulent denial of his claim. The court stated:

One salient feature of the statute is its statutory penalty provisions. The appellant argues that permitting a tort action would be inconsistent with the fact that the compensation statute provides a comprehensive system for adjudicating workers' compensation disputes, including specific remedies for the alleged injury.

*Kuney,* 525 Pa. at 175, 578 A.2d at 1286–87.[5] Our supreme court has clearly indicated that inasmuch as an employee's claim is ultimately based upon an injury compensable under the Act, as is the case here,

> *he is limited to the remedies provided within the framework of the act.* The exclusivity provisions of the workers' compensation law prohibit a tort action against the insurance carrier for damages caused by the insurer's allegedly intentional mishandling of the injured employee's compensation claim.

*Kuney,* 525 Pa. at 177, 578 A.2d at 1288.

Recently, in *Taras v. Wausau Insurance Companies,* 412 Pa.Super. 37, 602 A.2d 882 (1992), this court illustrated the fine distinctions between actions arising as a result of the carrier's mishandling of claims which have as their ultimate basis the underlying work-related claim, and actions which are not based upon an injury compensable under the Act and seek redress for a separate injury. There, Taras was involved in an automobile accident during the course and scope of his employment. Taras suffered physical injuries, as well as anxiety and depression. Wausau, the employer's compensation carrier, provided benefits for Taras and coordinated his medical treatment. *Id.* at 38, 602 A.2d at 883.

In the course of coordinating medical treatment, an agent of Wausau insisted that Taras undergo electro-convulsive thera-

5. In dissent, Justice Larsen stated that the conduct alleged by Kuney went beyond "unreasonable," and therefore was outside of the Act. *Id.,* 525 Pa. at 179, 578 A.2d at 1289. Kuney had alleged fraud, intentional infliction of emotional distress, misrepresentation and bad faith—conduct not addressed by the Act. He concluded, therefore, that the Act did not apply "to the economic and emotional harm suffered by a claimant due to the intentionally wrongful, obdurate, and fraudulent behavior of a workmen's compensation carrier occurring after the employee has been separated from his place of employment." *Id.* at 177, 578 A.2d at 1288.

py. This treatment, Taras alleged, caused direct psychological damage and exacerbated his underlying condition, post traumatic stress disorder—"A condition which, according to [Taras's] allegations, has its ultimate basis in Taras's participation in the Vietnam War, *and not in the underlying work-related accident,* as [the carrier] contends." *Id.* at 44, 602 A.2d at 887–88 (emphasis added). The *Taras* court explained the difference between this claim and those presented in *Kuney* and *Alston:*

> The damages which appellants seek, therefore, are not the type which fall within the ambit of the administrative remedies provided for in the Act, nor are they otherwise compensable under the Act. Thus, the rationale behind *Kuney* and *Alston* for applying the exclusivity provision of the Act so as to provide immunity to carriers from suits by claimants, is inapplicable in this instance.

*Id.*; *see also Tropiano v. Travelers Insurance Co.,* 455 Pa. 360, 319 A.2d 426 (1974) (injuries caused by medical treatment administered at the direction of the carrier are not the type of injuries for which the carrier should be immune from liability).

The damages which Santiago seeks are more analogous to those sought in *Kuney* and *Alston.* The instant case is factually and legally distinguishable from *Martin, Tropiano,* and *Taras,* and is reconcilable with *Kuney* and *Alston.* In *Taras,* the court explained the critical distinction as follows:

> While the tortious acts of the carriers in [*Kuney* and *Alston* ] may have come after the original injury, they were not independent of it. Rather, in *Kuney* and *Alston,* the tortious acts of the carriers were completely intertwined with the original injury, as their tortious acts related to the fraudulent denial of benefits for the original injury.

*Taras,* 412 Pa.Super. at 45, 602 A.2d at 889. It is sufficiently clear in this case that the allegedly tortious acts of Pennsylvania National are "completely intertwined" with Santiago's original compensable injury. Santiago avers in his complaint that his psychological deterioration was a result of his physical injury. Further, he avers that his depression and suicidal ideations occurred prior to the breakdown of the settlement

agreement in February of 1990, in fact as far back as 1987. Although the alleged tortious acts of the carriers occurred after Santiago's work-related injury, they were not independent of it. *Taras, supra.*

Following the holdings in *Kuney* and *Alston*, we find the exclusivity provisions of the Act apply in this case and provide immunity to Pennsylvania National. Unlike the direct injury resulting from the carrier's administration or coordination of medical treatment in *Tropiano* and *Taras*, Santiago's averments concern the handling of his claim and his remedy is specifically addressed by the provisions of the Act. Santiago, therefore, must operate within the framework of the statute and is precluded, under the exclusivity provision, from seeking redress in tort against the insurance carrier. *Kuney, supra.*

We conclude that the law states with certainty that Santiago's claims are barred under the exclusivity provision of the Workmen's Compensation Act. *International Union, supra.* We, therefore, affirm the trial court's order sustaining Pennsylvania National's preliminary objections and dismissing the complaint.

Order affirmed.

McEWEN, J., files a concurring opinion.

McEWEN, Judge, concurring:

While I join the majority Opinion, disquiet compels this expression. The Pennsylvania Supreme Court has made abundantly clear that the statutory declaration of the exclusivity provisions set forth in the Workmen's Compensation Act[1] precludes the presentation of any claim by an employee against the employer beyond the remedy afforded the employee by the Act. That Court has further decided that the exclusivity provision precludes the presentation of a common law tort claim by the employee against the employer even when the injury to the employee is caused by a deliberate and wanton disregard of the employer for the safety of its employees. *Poyser v. Newman and Co., Inc.*, 514 Pa. 32, 522 A.2d

---

1. 77 P.S. § 481(a).

548 (1987). The Act itself extended the immunity and exclusivity benefits enjoyed by the employer to the employer's workmen's compensation insurance carrier.[2] It remained for the Supreme Court, however, to confer upon the workmen's compensation insurance carrier immunity from tort liability even though the insurer was alleged to have engaged in fraud and deceit so as to deprive the injured employee of his workers' compensation benefits. *Kuney v. PMA Insurance Co.*, 525 Pa. 171, 578 A.2d 1285 (1990). And, most recently the Supreme Court extended the immunity of the employer and of the employer's insurance carrier to parties who serve the interest of the insurance carrier when the employer and its carrier are confronted with a claim under the Act. *Alston v. St. Paul Insurance Companies, et al.*, 531 Pa. 261, 612 A.2d 421 (1992).

The economic disparity between the employer and the employee in the form, *inter alia*, of availability of resources and immediacy of need—colloquially described as "the employer has the hammer"—was a basic consideration of the legislature when it designed the workmen's compensation law. As a result, the legislature proceeded on the one hand to relieve an employee of the need to prove fault, and, on the other hand, to restrict the remedies of the employee against the employer and to limit the recovery from the employer. The legislature thereby effected what it viewed as an equitable adjustment of the disparate economic positions of the employer and the employee.

As a result of judicial decision, the following principle has been impressed upon the workmen's compensation law as enacted by the legislature:

> The employer and the compensation carrier of the employer and the agents or representatives of the carrier are immune from tort liability to an employee however flagrant and willful their behavior in causing the injury or in handling the claim for compensation.

However readily one might reject as Molly Maguire rhetoric the cry that the decisions confer upon the employer the license

**2.** 77 P.S. § 501.

of oppressor, and while one would deny with dispatch the claim that the employer has been awarded a permit for flagrant and willful mistreatment [3], it does not seem unreasonable to conclude that the decisions go far beyond mere adjustment of the economically disparate positions of the employer and employee. Thus it is that I echo the call in *Alston* of the eminent Justice Ralph J. Cappy for corrective legislation because of his concern that this "well-intentioned interpretation may lead not only to absurdity but also to injustice".

---

**3.** The sanctions provided by the Act are arguably rather meager penalties for flagrant and willful misbehavior by the employer or the carrier.