**E. Jeffrey WIERNIK and Nonnette Wiernik, Individually and on Behalf of all others similarly situated, Appellants,**

**v.**

**PHH U.S. MORTGAGE CORPORATION and Cendant Mortgage, Appellees.**

Superior Court of Pennsylvania.

Argued May 20, 1999.

Filed Aug. 2, 1999.

---

Ronald J. Smolow, Trevos, for appellants.

Joseph F. Yenouskas, Washington, DC, for appellees.

Before CAVANAUGH, JOYCE and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 As the saying goes, sometimes it is not the amount of money at stake, but the principle of the matter that counts. Here, we are presented with a rather unwieldy and confusing case that, in the end, asks whether appellees owe appellants less than $20. After reviewing the central legal issues at hand, it becomes clear that here the principle of the matter means everything.

¶ 2 As summarized by the trial court, the facts of the case are relatively straightforward:

This matter involved a class action in which Plaintiff brings a claim on behalf of himself and others who have entered into mortgage agreements as borrowers with Defendants. Plaintiff entered into a thirty year mortgage with Defendant PHH U.S. Mortgage Company (hereinafter "PHH") on September 23, 1993. Plaintiff asserts that Defendant Cendant Mortgage (hereinafter "Cendant") is a wholly-owned corporation, subsidiary, affiliate or division of PHH and that Cendant assumed servicing of the mortgage.

In addition to requiring Plaintiff to make monthly payments of principal and interest, Plaintiff's mortgage also required Plaintiff to make monthly payments for taxes and insurance premiums. Under the terms of the mortgage, PHH held these additional funds in a non-interest bearing escrow account and paid the taxes and premiums from the escrow funds as they became due. On May 8, 1998, Plaintiff paid Cendant the balance of the loan secured by the mortgage. At this time, there was $6,489.36 in Plaintiff's escrow account. On May 28, 1998, Plaintiff received a check from Defendants in the amount of $6,489.36. Plaintiff's claims arise from his contention that Defendants failed to return his escrow funds "promptly" as required by the mortgage. Plaintiff's Complaint alleges 1) breach of contract, 2) unjust enrichment, 3) breach of fiduciary duty and constructive trust and 4) violation of the Consumer Fraud Act and Unfair Trade Practices and Consumer Protection Law.

Defendants filed Preliminary Objections to the Complaint in the nature of a demurrer. The Court granted Defendants' objections and dismissed the action. Plaintiff appealed to our Superior Court.

Trial court opinion, 2/1/99, at 1–2.

¶ 3 In cases, such as the present case, where appellants challenge the trial court's grant of preliminary objections on demurrer, our scope of review on appeal is well settled. We must accept all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom as admitted and true and decide whether, based on the facts averred, recovery is impossible as a matter of law. *See MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050, 1053–54 (1996) (citations omitted); *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402, 408 (1985). In making our decision, we need not consider the pleader's conclusions of law, unwarranted inferences from facts, opinions, or argumentative allegations. *See Pennsylvania State Lodge v. Commonwealth*, 692 A.2d 609, 613 (Pa. Cmwlth.1997), *aff'd without op.*, 550 Pa. 549, 707 A.2d 1129 (1998); *see also Santiago v. Pennsylvania Nat'l Mutual Casualty Ins. Co.*, 418 Pa.Super. 178, 613 A.2d 1235, 1238–39 (1992). If, however, any doubt exists as to whether a demurrer should be sustained, we must reverse the decision of the court below. *County of Allegheny*, 490 A.2d at 408.

¶ 4 In the light of the relevant scope of review, appellants present this Court with five questions:

1. Did plaintiffs state a cause of action for interest on their tax and insurance Escrow where their mortgage company, Cendant, was obligated to return the Escrow "Upon [sic] payment in full" of the mortgage loan?

2. Did the trial court err in concluding that 21 Pa.S.C.A. [sic] § 705 extended the agreed-upon time in which the mortgage lender was obligated to return the Escrow?

   a. Was 21 Pa.C.S.A. [sic] § 705 applicable to this transaction?

   b. Did the trial court err in concluding that 21 P.S.C.A. [sic] § 705 modified the time agreed to by the parties for refunding the Escrow?

   c. Did the trial court err in concluding that the legislature intended to give mortgage lenders a 30 day interest free loan?

3. Did the trial court err in dismissing plaintiffs' claims that the mortgage lender's retention of the Escrow for fictitious and groundless reasons was a prohibited pre-payment penalty?

4. Did the trial court err in dismissing plaintiffs' claim for unjust enrichment, breach of fiduciary duty, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law?

5. Should plaintiffs have been given the opportunity to file an amended complaint as requested?

Appellants' brief, at 3–4.

¶ 5 Central to appellants' contentions on appeal is the claim for breach of contract. In their claim for breach of contract, appellants argue that appellees violated ¶ 2 of the Uniform Covenants of their mortgage agreement, which states:

**2. Funds for Taxes and Insurance**

. . .

Upon payment in full of all sums secured by this Security Instrument,

Lender shall promptly refund to Borrower any funds held by Lender.

Uniform Covenants (page 2 of Form 3039), attached as exhibit B to complaint, 8/6/96. In reviewing appellees' preliminary objections, the court below found that, pursuant to 21 P.S. § 705, appellees had, in fact, "promptly" refunded those funds remaining in the escrow account, as § 705 provides that lenders have 30 days to make such refunds. We agree.

21 P.S. § 705 states:

A bank, savings bank, savings and loan association or other lending institution holding a residential mortgage shall send written notification by first class mail to the mortgagor when the mortgage has been fully paid. Any moneys remaining in any escrow account established for the payment of taxes or insurance premiums shall be returned within 30 days to the mortgagor.

*Id.* Appellants argue that § 705 is not applicable to the case at bar because definitions found in other statutory provisions in other statutory titles adopted separately specifically exclude appellees from the class of lenders considered in the act.

¶ 6 When construing a statute, our objective is to ascertain and effectuate the legislative intent. 1 Pa.C.S.A. § 1921(a); *see also Berger v. Rinaldi*, 438 Pa.Super. 78, 651 A.2d 553, 557 (1994). In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. *Id.* Accordingly, "whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Id.*

¶ 7 When faced with a question of statutory interpretation, we must consider the language and spirit of the Statutory Construction Act, which states:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statutes.

1 Pa.C.S.A. § 1921(c).

■ ¶ 8 Appellants argue that § 705 does not apply to the present case because, once other definitional statutes are considered, it becomes clear that both appellees as institutions and this mortgage in particular fall outside of the scope of the statute. First, appellants contend that appellees are not "other lending institution[s]" based on 40 P.S. § 281, which defines "lending institutions" as: "any institution that accepts deposits and lends money in the Commonwealth of Pennsylvania, including banks and savings and loan associations, but excluding insurance companies." *Id.* Appellants further argue that § 705 cannot apply to their mortgage because, as defined by 41 P.S. § 101, a "residential mortgage" only includes "an obligation to pay a sum of money in an original bona fide principal amount of *fifty thousand dollars ($50,000) or less,* evidenced by a security document and secured by a lien upon real property...." 41 P.S. § 101 (emphasis added).

¶ 9 While appellants cite currently applicable statutory language, we do not believe that reading either definition into the language of § 705 effectuates legislative intent in light of other factors. Neither the definition of "lending institution" or "residential mortgage" arises from the same title, let alone the same statute or act as § 705. Furthermore, none of the cited statutes were considered, adopted, or amended contemporaneous to one another. More importantly, given the scope of § 705 and the general circumstances under which it was passed, we cannot see that the inclusion of either definition serves to effectuate legislative intent. Were we to adopt appellants' reasoning, those institutions that both receive deposits and lend money would be entitled to more protections than the multitude of mortgage lenders that do not accept deposits. Further, those persons who have enough money and credit-worthiness to enable them to take on a residential mortgage for more than $50,000 would be entitled to greater freedom to contract than those persons who are not as financially fortunate. In light of the realities of the real estate and mortgage markets as they existed in 1986 (the year when the legislature adopted § 705), we cannot find grounds to go beyond the plain meaning of the legislative enactment to include definitions from separate titles, passed at separate times, dealing with separate subjects, and not specifically referenced by the legislature.

■ ¶ 10 As a result, we agree with the decision of the trial court that § 705 is applicable to the case at bar. Pursuant to § 705, appellees, as "lending institution[s] holding a residential mortgage," were required to return all funds remaining in appellants' escrow account within 30 days after the mortgage was fully paid. Here, appellees complied with their statutory duty by forwarding remaining funds within 20 days of the date that appellants paid the balance of the mortgage. Given that the mortgage agreement specifically states that it is governed by both federal and Pennsylvania law, we find that the term "promptly refund" allows appellees 30 days in which to refund the funds remaining in the escrow account following payment in full of the mortgage itself. *See* Mortgage Agreement (form 3039), ¶¶ 1, 15 (attached as Exhibit B of the Complaint, 8/6/96).

¶ 11 Having found that appellees did not breach their contract with appellants, we must turn to appellants' remaining claims against appellees—unjust enrichment, breach of fiduciary duty, and violations of the Unfair Trade Practices and Consumer Protection Law. We agree with the trial court that § 705's applicability leads to the dismissal of appellants' remaining claims as a matter of law.

¶ 12 Appellants claim that appellees were unjustly enriched by the "interest-free loan" they received when they held appellants' money after receiving the payoff for the mortgage without paying interest earned on said money to appellants. Unjust enrichment is a quasi-contractual doctrine based in equity; its elements include " 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.' " *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347, 350 (1993), *quoting Wolf v. Wolf*, 356 Pa.Super. 365, 514 A.2d 901 (1986). When considering the validity of a claim for unjust enrichment, we must focus on "whether the enrichment of the defendant is *unjust*. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Id.* (citations omitted).

¶ 13 After reviewing the facts in the present case, as pled, it becomes clear than any alleged benefit received by appellees did not constitute unjust enrichment. Having found that § 705 allows appellees up to 30 days to refund appellants' remaining funds from the non-interest-bearing escrow account, we cannot conclude that appellees could be unjustly enriched as a result of invoking their statutory rights. While appellants claim that appellees lost the ability to retain the funds in a non-interest-bearing account once appellants paid off the mortgage, we cannot see how the mortgage contract, the common law, or common sense required that appellees pay interest on funds refunded out of a non-interest-bearing escrow account.

¶ 14 Appellants also contend that, based on *Buchanan v. Century Federal Savings and Loan Ass'n*, 374 Pa.Super. 1, 542 A.2d 117 (1988), appellees breached a fiduciary duty owed to appellants based on the existence of the escrow account. We cannot agree. In the *Buchanan* line of cases, this Court and our Supreme Court considered whether a mortgagee owes a fiduciary duty to a mortgagor relating to funds placed in an escrow account. *See Buchanan v. Brentwood Federal Savings and Loan Ass'n*, 457 Pa. 135, 320 A.2d 117 (1974) [*Buchanan I* ]; *Buchanan v. Century Federal Savings and Loan Ass'n*, 374 Pa.Super. 1, 542 A.2d 117 (1988) (*en banc* ) [*Buchanan III* ]. When faced with the case on appeal from a demurrer in *Buchanan I*, our Supreme Court found that the mortgagor established a prima facie case that the parties to the agreement intended to create a trust. Later, on an appeal after verdict, our Court reviewed the applicable law on trusts and the language of the mortgage agreement and found that, in that specific case, the parties' intent to create a trust relationship was clearly evidenced by the language of the agreement. In *Buchanan III*, our Court stated:

> Looking at the mortgage agreement as a whole we believe it evidences an intent that the advance payments are to be held in trust by the mortgagee. The express language used in the form, drafted by FHA, is that these advance sums are "to be held by Mortgagee in trust to pay ground rents, premiums, taxes, and special assessments. . . ."

*Buchanan III*, 542 A.2d at 120.

¶ 15 While the parties to the mortgage agreement in *Buchanan* clearly evidenced an intention to create a trust relationship, here the parties evidenced no such intent. Further, while both the Supreme Court

and our Court considered and applied the general law of trusts to the facts of the *Buchanan* case, neither court specifically held that all escrow accounts created by mortgage agreements are trusts as a matter of law. As appellants failed to establish that the parties evidenced any intention to create a trust relationship, we cannot concur with appellants' contention that "[u]nder these circumstances and given this relationship, the 'rule of reason' should require Cendant to pay plaintiffs for its use of their money as well." Appellants' brief, at 24–25.

■ ¶ 16 Appellants also contend that appellees' actions (or inaction) violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Appellants specifically contend that, independent of the applicability of § 705, appellees' violated the UTPCPL by misrepresenting when appellants would receive their escrow refund. *See* Appellants' brief, at 27. Appellants argue that, as pled in their complaint, appellees "falsely represented in the Mortgage that the Escrow would be paid 'promptly' after the mortgage was paid off." Appellants' brief, at 28. Further, they argue that appellees "falsely represented in the Payoff Statement that the delay in issuing the escrow refund was to make sure that plaintiff's mortgage payment cleared. This was false because Cendant required loan payoffs to be made by wire transfer or certified funds.... They clear immediately." *Id.* Finally, appellants claim "that Cendant's representation that the escrow was for taxes and insurance was false since the *only* use of the escrow *after* loan payoff was for Cendant to earn interest." *Id.*

¶ 17 First, we cannot agree with appellants' contention that appellees violated the UTPCPL by claiming that monies would be "promptly refunded" in light of § 705. While the mortgage agreement promises "prompt" refund, the agreement also specifically adopts all relevant state laws, including § 705. Since appellees are permitted up to 30 days to refund escrow accounts, we find that appellees' payment in 20 days was "prompt." Therefore, appellees did not misrepresent that the escrow would be refunded promptly; instead, they lived up to their promise and "promptly" paid the appellants.

■ ¶ 18 Moreover, we cannot find that appellees misrepresented the purpose for the delay in the refund. The payoff statement cited by appellants makes it clear that the refund of escrow accounts will be delayed in order to ensure that the mortgagor actually receives the mortgage payoff payment. While appellants argue that the banking system does not allow for withdrawals or cancellations of payments by wire transfer or certified check, this does not mean that appellees misrepresented the rationale for their refund delay. As the payoff statement clearly indicates, appellees accepted "certified funds, *attorney trust checks,* or wire transfers" as payment in full. Payoff Statement, 4/28/98 (attached as Exhibit C of the Complaint, 8/6/96). Should a mortgagor choose to pay off the mortgage through an attorney trust check, the mortgagee would have to wait for clearance of the payment. Attorney trust checks do not clear instantly; thus, appellants' argument that appellees misrepresented the rationale for the delay in issuing refunds lacks merit.

■ ¶ 19 Neither can we agree with appellants that appellees misrepresented the purpose of the escrow account because appellees also used the escrow funds to earn interest once the mortgage was paid in full. In their complaint, appellants make the bald assertion that "[i]t is believed that defendants delayed refunds to plaintiffs ... in order to earn interest on their Escrows or to obtain other consideration or benefits from defendants' banks or lenders in exchange for the float...." Complaint, at ¶ 15. In their brief, appellants ask that this Court reverse the lower court's decision based on their speculative, unsubstantiated assertion that appellees must have had an improper motive, and

that this allegation rises to the level of a prima facie case for misrepresentation in violation of the UTPCPL. We will not follow appellants down this mystical path so as to allow appellants to proceed with their cause of action based on this one speculative allegation alone.

¶ 20 Finally, we must consider whether the trial court erred in denying appellants' motion to amend their complaint pursuant to Rule of Civil Procedure 1033. Our standard of review of a decision to deny leave to amend is clear. "A motion to amend a pleading is addressed to the sound discretion of the trial court and the trial court's determination is not to be disturbed on appeal absent an abuse of discretion." *Sejpal v. Corson, Mitchell, Tomhave & McKinley, M.D.'S, Inc.*, 445 Pa.Super. 427, 665 A.2d 1198, 1200 (1995). While the right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully, "[w]here allowance of an amendment would ... be a futile exercise, the complaint may be properly dismissed without allowance for amendment." *Carlino v. Whitpain Investors*, 499 Pa. 498, 453 A.2d 1385, 1388 (1982) (citations omitted). Further, where appellants seek to amend their complaint, but do not specify how they would amend it, "it is unclear to us how the amendment would in any way overcome our conclusions;" thus, in that case, we will not reverse the apt decision of the court below. *Bell v. Irace*, 422 Pa.Super. 298, 619 A.2d 365, 370 (1993).

¶ 21 Here, appellants challenge the trial court's decision to deny their motion for leave to amend the complaint. It is not clear in either of appellants' briefs to this Court or in the record how appellants intend to amend their complaint in such a way as to overcome the legal conclusions made by our Court. *See* appellants' brief, at 29; appellants' reply brief, at 10–11. While appellants may argue that they did not have the opportunity to explain their amendments to the trial court, they continue to refuse to explain what amendment they would make to this Court. We will not deem that the lower court abused its discretion if we cannot understand how appellants' amendments would serve to redeem their case.

¶ 22 Order affirmed. Case dismissed.

¶ 23 CAVANAUGH, J., Concurs in the Result.