632 A.2d 909

**KEYSTONE FUNERAL DIRECTORS ASSOCIATION, Appellant,**

v.

**CALVARY CEMETERY ASSOCIATION, Calvary Family Services, Inc., Daniel R. Myers, Anthony P. Scaglione, Vincent Good, and Theodore J. Feller.**

Superior Court of Pennsylvania.

Argued June 23, 1993.

Filed Oct. 22, 1993.

Marcia L. Cooper, Pittsburgh, for appellant.

Frank P. Clark, Harrisburg, for Calvary Cemetery & Calvary Family, appellees.

Benjamin H. Claar, Jr., Hollidaysburg, for Myers, Scaglione, Good & Feller, appellees.

Before OLSZEWSKI, HOFFMAN and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order granting preliminary objections and dismissing appellant's complaint in equity. One issue is presented for our resolution, whether the court of common pleas, sitting in equity, has jurisdiction to enjoin individuals pursuant to 63 P.S. § 479.12 prior to a determination of the State Board of Funeral Directors that the individuals are in violation of the Funeral Directors Law? We vacate and remand.

Appellant is an association of licensed funeral directors located primarily in Blair and Cambria County. They allege that appellees have participated in, and continue to participate in, activities in violation of the Funeral Directors Law. Appellant filed a complaint in equity in the Court of Common Pleas of Blair County seeking to enjoin appellees from certain allegedly illegal activities. Appellees filed preliminary objections raising, among other things, that the court lacked jurisdiction to enjoin appellees prior to a finding by the Board of a violation(s) of the Funeral Directors Law. The court agreed and dismissed appellant's complaint pending actions by the board. Appellant filed this appeal and we now consider the question.

The relevant section of the Funeral Director's Law, 63 P.S. § 479.12, states:

(a) All actions of the board shall be taken, subject to the right of notice, hearing and adjudication and the right of appeal therefrom, in accordance with the provisions of the Administrative Agency Law.

(b) Any association of funeral directors or any party in interest shall be entitled to be heard by the board in any proceeding under the Administrative Agency Law. Any association of funeral directors or any person having an interest may, by an action in equity, obtain an injunction to prevent the illegal operation of a person, firm, corporation or establishment in violation of law or the regulations of the board.

(C) The board, upon the advice of the Attorney General, may maintain an action in the name of the Commonwealth for an injunction or other process against any person to restrain or prevent his practicing the profession of a funeral director in a public or private capacity. No action brought under the provisions of this act shall prevent the prosecution or institution of any civil or criminal action provided by this act for violation thereof or of any rule or regulation of the board promulgated thereunder.

Section 479.12(b), states that any association of funeral directors or interested person may obtain an injunction, by action in equity, to prevent the illegal operation of funeral services. Despite the fact that the text of § 479.12 does not state that a finding of illegal activity by the Board is a prerequisite to seeking injunctive relief, the trial court concluded that an injunction could not be sought until the Board had made a finding that a violation of the Act had occurred. The court states "what Plaintiffs attempt to do by this action is circumvent the State Board of Funeral Directors entirely by initially bringing their request for a finding of illegal operations/request for injunctive relief before this Court at the outset." Trial Ct.Op. at p. 7. This statement seems to suggest that there is a remedial alternative for an association or interested party, who believes that another is operating

illegally, to seeking an injunction in equity. It further suggests that this alternative is to litigate the matter before the Board. Upon inspection of the Act neither premise seems to be supported by the text of the Act itself.

Clearly, the Board does not have the ability to issue injunctive relief as it is not a court of law and as the Act does not empower the Board to issue an injunction. The absence of authority to issue an injunction or otherwise prevent a party from violating the Act is also deducible from the fact that subsection (c) allows the Board to bring an action for injunctive relief in the name of the Commonwealth. Such a provision would be unnecessary if the board was empowered to issue an injunction itself.[1] Consequently, if injunctive relief is the most appropriate remedy the Board cannot provide it and a litigant will eventually be required to seek redress from the Court of Common Pleas in any event. Further, this means that requiring a litigant to seek a finding of illegal operation from the Board prior to seeking an injunction, assuming that the Board is even empowered to entertain such a request, will require a litigant to endure two separate proceedings to obtain the injunction when, conceivably, one would suffice.

As to litigating the matter before the Board initially, or, in the words of the trial court, making a request "for a finding of illegal operations," the Act does not appear to contain express provisions allowing an association to institute an action for civil or criminal sanctions against an alleged violator in front of the Board or for requesting a finding of illegal operations. Subsection (b) allows a party in interest or an association of funeral directors to be *heard* in any proceeding conducted under the Act. Ostensibly then, in a proceeding between the Board and another party appellant would have a right to be heard in the matter. However, although the language of the Act confers a right on the part of an association or interested party to be heard in a proceeding it does not similarly confer the right to initiate or institute a proceeding. Indeed, the Funeral Directors Act does not even contain provisions for the

1. The facts of *Stiles v. Stiles*, 397 Pa. 352, 155 A.2d 367 (1959), discussed *infra*, further support this premise.

filing of a formal complaint against someone believed to be violating the Act so as to apprise the Board of the alleged violations. Contrast this with the provisions relating to various other professions regulated by a "board" and covered in Title 63.

The comparable provisions of the Auctioneer and Auction Licensing Act states that:

"the board may, upon its own motion, and shall, promptly upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any person licensed by the board and may temporarily suspend or revoke licenses...." 63 P.S. § 734.20.

Similarly, the Real Estate Licensing and Registration Act provides:

"The commission may upon its own motion, and shall promptly upon the verified complaint in writing of any person setting forth a complaint under this section, ascertain the facts and, if warranted, hold a hearing for the suspension and revocation of a license...." 63 P.S. § 455.-604.

With respect to Architects there is a section with the heading "Complaint procedures and hearings." The text of that section states:

"Any person may prefer charges against a person licensed under the provisions of this act by submitting a written statement of charges, sworn to by the complainant, to the board." 63 P.S. § 34.21.

Similar provisions can be found with respect to pharmacists, 63 P.S. § 390–7(a)(2), motor vehicle manufacturers, dealers and salespersons, 63 P.S. § 818.4(3), and nursing home administrators, 63 P.S. § 1104(a)(5). Additionally, the duty of the board to conduct investigations of complaints is referred to in §§ 457.5(4), 485.5(10) and 1303(a), with respect to real estate appraisers, veterinarians and physical therapists respectively. Whereas the various acts outlined above contain specific provisions whereby a third party may register some form of

complaint against an alleged violator and have them investigated by the board, the Act in question here is silent as to the filing of complaints with the State Board of Funeral Directors. In light of the fact that such provisions are provided elsewhere in the Title regarding the regulation of other professions, their absence in the section regulating funeral directors clearly handicaps appellees' argument that there existed administrative avenues open to appellant. However, even if there existed obvious administrative remedies available to appellant it is not necessarily true that appellant would be obligated to exhaust them prior to seeking injunctive relief.

In *Frye Construction, Inc. v. City of Monongahela*, 526 Pa. 170, 584 A.2d 946 (1991), an adjacent landowner to Frye constructed structures on its property which were not encompassed in a building permit issued to the landowners and which were not permitted by the applicable zoning ordinance. When the zoning authorities ignored Frye's complaints, Frye filed actions in court. One action was a mandamus action, the other action was in equity. Both actions were dismissed for failure to exhaust administrative remedies. The Court remarked that exhaustion of administrative remedies was not an absolute doctrine and that the decision whether or not to apply the doctrine was itself a matter of the exercise of judgment and discretion. With respect to the equity action, the Commonwealth Court had remarked, as did the court below, that dismissal was proper because the parties were attempting to do indirectly what they could not do directly, namely, adjudicate in equity a matter properly left for the board. Our Supreme Court reversed noting that Frye could not achieve the desired enforcement remedy, removal of the offending structures, from the City Zoning Board. The Court remarked that although ordinarily the primary duty of enforcing zoning regulations rested with zoning authorities, the landowner, whose enjoyment of his own property would be encroached by the violations, had an interest that could be protected by seeking an injunction.

Similarly, in *Ohio Casualty Group v. Argonaut Insurance Co.*, 514 Pa. 430, 525 A.2d 1195 (1987), our Supreme Court

remarked "exhaustion will not be required when the adminis-
trative process is not capable of providing the relief sought."
525 A.2d at 1198. Perhaps even more appropriate to our case
was the Court's additional commentary:

> Under the doctrine of exhaustion before a litigant can be
> denied access to the courts there must be a forum available
> in which he or she can participate. Nebulous claims of
> informal procedures or implied administrative powers are
> unavailing since it is clear that without a concrete procedur-
> al remedy the litigant could in no way achieve a resolution
> of his claim except by the grace of the party against whom
> he is proceeding.

*Id.*, 525 A.2d at 1198. As remarked earlier, the text of the Act
has no express provisions for a third party to seek relief
against an alleged violator. Nor have appellees or the trial
court clearly stated what the supposed administrative reme-
dies, that should be exhausted prior to allowing access to the
court, are. The assertion of these remedies is, at best,
nebulous and under *Ohio Casualty*, will not prevent access to
the court of common pleas. As the Board cannot provide
appellant with an injunction, and as there appear to be no
administrative remedies available to appellant under the Act,
*Frye* and *Ohio Casualty* suggest that the forum of choice is
the Court of Common Pleas.

The trial court and appellee argue that had the legislature
wished to allow a party to seek injunctive relief prior to the
Board's finding of a violation the first sentence in subsection
(b) could have stated that any association shall be entitled to
be heard by the Board in any proceeding under the Adminis-
trative Agency Law *or by the Court of Common Pleas.* Trial
Ct.Op. at 7. However, this argument does not consider the
lack of provisions for initiating an action by an association or
interested party. The argument seems to equate being
"heard" by the Board as a right to institute proceedings. As
outlined above, there is no express language of the Act
allowing an association to institute proceedings before the
Board. In contrast, the language referring to an injunction
states that an association or interested party may *obtain* an

injunction by action in equity. This language would appear to specifically contemplate the association or interested person initiating the proceedings by complaint in equity in the Court of Common Pleas. Furthermore, in similar vein to the argument of appellee and the trial court, had the legislature wished to require an association or interested party to adjudicate the violations before the Board prior to seeking injunctive relief it could have simply added language stating "after a finding of a violation by the Board" to the provisions regarding an action in equity.

Appellees also argue that *Stiles v. Stiles,* 397 Pa. 352, 155 A.2d 367 (1959), supports their position. In *Stiles,* an individual sought an injunction to prevent a former partner in a funeral establishment, his brother, from practicing in violation of the Act. The plaintiff argued that his brother continued to operate a funeral business although he was no longer licensed to do so and that as a result the plaintiff was losing business to him. The court dismissed on the basis of jurisdiction. Our Supreme Court found that the Court of Common Pleas of Philadelphia County did have jurisdiction to issue an injunction to enjoin illegal operation of funeral services. The Court noted that the facts alleged contradict the contention that the plaintiff had not exhausted his remedies before the Board. Appellees argue that this supports a contention that the Board must find a violation prior to the court of common pleas exercising jurisdiction. We disagree.

The allegations referred to by our Supreme Court were that plaintiff's brother continued to operate a funeral home despite being specifically directed not to by the Board. The allegation does not indicate how the Board came to direct plaintiff's brother to stop providing funeral services. It does not indicate whether that directive was a result of the institution of a proceeding by plaintiff before the Board or one initiated by the Board itself. In light of the absence of express provisions in the Act which allows institution of adjudications in front of the Board by associations or interested parties, we cannot conclude that this footnoted reference allows, let alone requires, a party to seek a finding by the Board prior to seeking

equitable relief. Furthermore, in *Stiles* the finding by the Board that the individual was operating illegally did not prevent that individual from practicing anyway. Consequently, an action in equity was required despite the Board's involvement. The same result could follow the Board's finding here that appellees are violating the Act. Should that happen, either appellant or the Board would then be required to seek an injunction. These facts seem to support the appropriateness of allowing the court of common pleas to entertain equity jurisdiction regardless of whether the Board has made a specific finding of illegal operation.

■ For the above reasons we conclude that § 479.12 of the Funeral Director Law does not require a finding of a violation of the Act by the State Board of Funeral Directors prior to the Court of Common Pleas being vested with jurisdiction to issue an injunction as provided in 63 P.S. § 479.12(b). Consequently, we vacate the order appealed from and remand to the Court of Common Pleas for a continuation of proceedings.

Order vacated, case remanded. Jurisdiction relinquished.