The Ohio Casualty Group of Insurance Companies, Petitioner *v.* Argonaut Insurance Company and Thomas J. Judge, Sr., as Director of the Medical Professional Liability Catastrophe Loss Fund of the Commonwealth of Pennsylvania, Respondents.

Argued September 9, 1985, before Judges ROGERS and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Patrick J. Shannon, Ronald H. Heck and Associates, P.C.,* for petitioner.

*David H. Trushel, Trushel, Wood & Israel,* for respondent, Argonaut Insurance Company.

*Gwendolyn T. Mosley,* Deputy Attorney General, with her, *Allen C. Warshaw,* Chief Deputy Attorney

General, Chief, Litigation Section, and *LeRoy S. Zimmerman*, Attorney General, for respondent, Thomas J. Judge, Sr.

OPINION BY JUDGE MACPHAIL, November 4, 1985:

Before us are a motion for partial summary judgment filed by the Argonaut Insurance Company (Argonaut) and the preliminary objections filed by the Director of the Medical Professional Liability Catastrophe Loss Fund (Fund)[1] to a petition for review filed by the Ohio Casualty Group of Insurance Cos. (Ohio Casualty). We will deny the motion for partial summary judgment and overrule the preliminary objections.

In order to understand the contentions of each party, it is necessary to examine the underlying medical malpractice claim.[2] On or about July 16, 1975, Joyce Mihelic (patient) was involved in a serious motorcycle accident. The patient was admitted to Lee Hospital (hospital) in Johnstown, Pennsylvania, suffering from a supracondular fracture of her right femur in addition to multiple abrasions and lacerations. Dr. William Davison treated the patient, placing a long leg cast on the patient's right leg.

On September 26, 1975, the patient returned to Dr. Davison for removal of the cast. Although x-rays revealed that the leg had not properly healed, Dr. Davison removed the cast.

---

[1] The Fund was established by Article VII of the Health Care Services Malpractice Act (Act), Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§1301.101-1301.1006. The effective date of the Act is January 13, 1976. Section 10 of the Act of July 15, 1976, P.L. 1028.

[2] Although Argonaut disputes some of the factual allegations stated by Ohio Casualty in its petition for review, we have set forth the facts as they appear in the petition for review solely to indicate the basis of the action brought by Ohio Casualty.

On November 4, 1975, the patient was readmitted to the hospital suffering from complications with her leg. Although the patient was discharged on December 23, 1975, she was readmitted to the hospital on July 27, 1976, again with complaints concerning her leg. Dr. Davison, after examining the patient, concluded that a previously inserted condular plate should be removed from the patient's leg.

On July 28, 1978, the patient underwent surgery for removal of the condular plate, with Dr. Davison performing the surgery. Dr. Davison neglected to administer post-operative antibiotic spray. The patient was discharged from the hospital on August 5, 1976.

On October 19, 1976, the patient was admitted to the emergency room at the hospital where an examination revealed the presence of infection in the distal femur and an infected non-union. A previous examination performed by Dr. Davison had not disclosed any infection.

The patient subsequently retained the services of another physician and instituted a malpractice action against Dr. Davison. Dr. Davison referred the medical malpractice action to Argonaut, his basic insurance carrier.[3]

A settlement of $145,000 proposed by the patient was taken under consideration by Argonaut. On or about September 21, 1981, the patient underwent knee surgery and the settlement proposal was withdrawn.

---

[3] The basic insurance coverage required by providers other than hospitals is $100,000 per occurrence and $300,000 per annual aggregate. Section 701(a)(1)(i) of the Act, 40 P.S. §1301.701(a)(1)(i). For the period January 1, 1975 through January 15, 1976, Argonaut provided basic coverage to Dr. Davison at $200,000 per occurrence and $300,000 per annual aggregate. Argonaut now provides Dr. Davison with $100,000 insurance per occurrence and $300,000 per annual aggregate.

On November 19, 1983, the medical malpractice action was settled for $455,000. Argonaut contributed $200,000 to the settlement. Ohio Casualty, as Dr. Davison's excess insurer, provided the difference.[4]

In this original action,[5] Ohio Casualty alleges (1) that Argonaut acted in bad faith and without due care when it refused to accept the $145,000 proposed settlement;[6] (2) that there was not one but two separate occurrences of medical malpractice[7] and that therefore, Argonaut must contribute an additional $100,000 for the second act of malpractice; and (3) that because the second act of medical malpractice occurred after the effective date of the Act, the Fund was under a statutory obligation to contribute to the settlement.[8] See Section 705(a) of the Act, 40 P.S. §1301.705(a).

---

[4] Ohio Casualty provided excess coverage to Dr. Davison up to a policy limit of $1,000,000.

[5] This Court has original jurisdiction under Section 761(a)(1) of the Judicial Code, 42 Pa. C. S. §761(a)(1) of all civil actions or proceedings "[a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity. . . ."

[6] We note that Ohio Casualty had asserted that this proposed settlement had been withdrawn. We believe that Ohio Casualty is contending that Argonaut did not act expeditiously in considering this proposed settlement, as it was withdrawn before it could be either accepted or refused.

[7] An "occurrence" policy protects a policyholder from liability for any act done while the policy is in effect. Appleman, Insurance Law and Practice (Berdal ed.) §4503 (1979), citing St. Paul Fire & Marine Insurance Co. v. Barry, 438 U.S. 531, 535 n.3 (1978).

Ohio Casualty contends that the two separate acts of medical malpractice were (1) prematurely removing patient's cast on September 21, 1975 and (2) failing to administer post-operative antibiotic spray on July 28, 1976.

[8] The Fund, an executive agency of the Commonwealth of Pennsylvania, provides excess liability coverage for health care providers. The Fund pays:

all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the [F]und as a consequence of any claim for professional lia-

We will first address Argonaut's motion for partial summary judgment. We note that "[a] summary judgment may be properly entered only where the moving party has established that there remains no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Peters Township School Authority v. United States Fidelity and Guaranty Co.,* 78 Pa. Commonwealth Ct. 365, 369, 467 A.2d 904, 906 (1983). The moving party must sustain the heavy burden of proving that its right to summary judgment is clear. *Zeck v. Balsbaugh,* 66 Pa. Commonwealth Ct. 448, 445 A.2d 253 (1982). It is this Court's duty to examine the record in the light most favorable to the non-moving party. *Burd v. Department of Transportation,* 66 Pa. Commonwealth Ct. 129, 443 A.2d 1197 (1982), *rev'd on other grounds, Scanlon v. Department of Transportation,* 502 Pa. 577, 467 A.2d 1108 (1983). Any doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Donnell v. Pennsylvania Board of Probation and Parole,* 70 Pa. Commonwealth Ct. 265, 453 A.2d 36 (1982) (per curiam).

It is clear from a reading of the sparse record in the instant case that Argonaut has not sustained its heavy burden. Argonaut has asked this Court as a matter of *law* to determine that there was only one occurrence of medical malpractice when it readily appears that this is a question of fact.[9] Accordingly, we must deny the motion for partial summary judgment.

---

bility brought against such health care provider . . . to the extent such health care provider's share exceeds his basic coverage insurance in effect at the time of occurrence . . . .
The limit of liability of the [F]und shall be $1,000,000 for each occurrence for each health care provider and $3.000,000 per annual aggregate for such health care provider.
Section 701(d) of the Act, 40 P.S. §1301.701(d).

[9] We note that there is no statutory definition of "occurrence". Argonaut refers us to *Appalachian Insurance Co. v. Liberty Mutual*

We now turn to the preliminary objections the Fund filed to the petition for review. We are mindful that in reviewing preliminary objections, only facts that are well-pleaded, material and relevant will be considered as true; only such reasonable inferences as may be drawn from these facts may be admitted; that conclusions of law, argumentative allegations, expressions of opinion and unreasonable inferences will not be admitted; and preliminary objections will only be sustained if they are clear and free from doubt. *City Firefighters' Association v. Philadelphia*, 65 Pa. Commonwealth Ct. 283, 442 A.2d 393 (1982).

The basis underlying the Fund's preliminary objections is that Ohio Casualty has not exhausted administrative remedies. Under the doctrine of exhaustion of administrative remedies, one must exhaust all available adequate administrative remedies before re-

---

*Insurance Co.*, 676 F.2d 56 (3rd Cir. 1982) for the proposition that "[t]he determination of whether an occurrence is single or multiple properly depends upon whether there is a single cause or multiple cause for the losses sustained." *Appalachian Insurance Co.*, 676 F.2d at 60.

In *Appalachian Insurance Co.*, the issue presented was "whether a liability insurer must provide coverage for losses its insured incurred in the settlement of class action litigation involving sex discrimination in employment where the insured's discriminatory conduct originated before the effective date of coverage but had an impact on class members both before and after that date." *Id.* at 58. The Court held that although there had been many injuries, there was only one occurrence or cause—the employer's discriminatory employment policies. However, in reaching that conclusion, the Court applied the insurance policy's definition of occurrence. *See also Transamerica Insurance Co. v. Bellefonte Insurance Co.*, 490 F. Supp. 935, 938 (E.D. Pa. 1980) (policy defined "occurrence" to mean "accident"). The proper construction of insurance policies is a matter of law. *Vale Chemical Co. v. Hartford Accident and Indemnity Co.*, 340 Pa. Superior Ct. 510, 516, n.4, 490 A.2d 896, 899 n.4 (1985). Unfortunately, neither Argonaut nor Ohio Casualty has provided this Court with their policy's definition of occurrence.

sorting to the courts. *See Shenango Valley Osteo-pathic Hospital v. Department of Health*, 499 Pa. 39, 451 A.2d 434 (1982). The Fund contends that 1 Pa. Code Part II, applicable to the "activities of and proceedings before" the Fund by virtue of the Fund regulations, 31 Pa. Code §§242.1-242.20, contains a detailed and thorough procedure whereby Ohio Casualty should have filed a formal complaint with the Fund. *See* 1 Pa. Code §35.9 ("Any person complaining of anything done or omitted to be done by any person subject to jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency, may file a complaint with the agency."). Ohio Casualty argues that the complaint process does not provide an adequate remedy. We agree.

Whether or not the Fund is liable over to Ohio Casualty is dependent upon a resolution of whether there were one or two occurrences of medical malpractice. The resolution of this issue is not within the Fund's specialized knowledge but rather is a question of fact appropriate for an impartial fact-finder. Unlike claims brought by patients or their representatives, which are under the original exclusive jurisdiction of an arbitration panel, Section 309 of the Act, 40 P.S. §1301.309, there is no specific statutory provision regarding claims between insurance companies and the Fund. We believe that the Fund regulations do not address the latter claims. Additionally, we note that although Section 702(f) of the Act, 40 P.S. §1301-.702(f) authorizes the director of the Fund to "defend, litigate, settle or compromise any claim payable by the [F]und," the director is not authorized to determine the outcome of such claims. Section 702(f) of the Act contemplates the Fund being involved in litigation concerning the claims, which is exactly the situation the instant case presents: the Fund must "de-

fend, litigate, settle or compromise'' its position that it is not liable over to Ohio Casualty. *Compare Judge v. Allentown and Sacred Heart Hospital Center,* 506 Pa. 636, 641, 487 A.2d 817, 819 (1985), slip op. at 6 (Although agency may not "exceed the limitations which have been established by the Legislature for the agency's exercise of its own authority", this rationale "does not support a limitation on the ability of an agency to enforce its rights or seek a remedy in a judicial forum.''). We will overrule the preliminary objections.

### ORDER

The Argonaut Insurance Company's motion for partial summary judgment is denied. The preliminary objections raised by the Director of the Medical Professional Liability Catastrophe Loss Fund are overruled. Leave is granted to the Director of the Medical Professional Liability Catastrophe Loss Fund to file an answer to the petition for review within twenty (20) days of receipt of this opinion and order.

Date: November 4, 1985.

### ORDER

AND Now, January 6, 1986, the order entered November 4, 1985 is amended to read as follows:

### AMENDED ORDER

The Argonaut Insurance Company's motion for partial summary judgment is denied. The preliminary objections raised by the Director of the Medical Professional Liability Catastrophe Loss Fund are overruled. Leave is granted to the Director of the Medical Professional Liability Catastrophe Loss Fund to file an answer to the Petition for Review within twenty (20) days of receipt of this opinion and order.

This order involves a controlling question of law as to which there is substantial ground for difference of opinion. An immediate appeal from this order may materially advance the ultimate termination of this matter.

Date: January 6, 1986.