525 A.2d 1195

**The OHIO CASUALTY GROUP OF INSURANCE COMPANIES, Appellee,**

v.

**ARGONAUT INSURANCE COMPANY, et al.**

Appeal of Thomas J. JUDGE, Sr., as Director of the Medical Professional Liability Catastrophe Loss Fund of the Commonwealth of Pennsylvania.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1986.

Decided May 22, 1987.

Gwendolyn T. Mosley, John G. Knorr, III, Andrew S. Gordon, Harrisburg, for appellants.

Patrick J. Shannon, Ronald H. Heck, Pittsburgh, for Ohio Casualty Group of Ins. Companies.

David H. Trushel, Pittsburgh, for Argonaut Ins. Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The appellant, Mr. Thomas A. Judge, Sr., is the Director of the Medical Professional Liability Catastrophe Loss Fund (hereinafter Fund). The Fund is a part of a plan to provide medical malpractice insurance as promulgated in the Health Care Services Malpractice Act (hereinafter Act).[1] The purpose of the Act is to provide reasonably priced professional malpractice insurance to health care providers in the Commonwealth; and to insure that persons who are injured by them in their practices may obtain prompt and fair compensation for their claims. 40 P.S. § 1301.102.

The system which the Act established contemplates that every health care provider who conducts more than 50% of his business in the Commonwealth must insure himself against professional liability by maintaining "basic coverage insurance" in the amount of $100,000 for each occurrence and $300,000 in the annual aggregate. 40 P.S. § 1301.-701(a)(1)(i). The Act established the Fund to provide liability coverage over and above the basic coverage insurance up to $1,000,000 for each occurrence and $3,000,000 in the annual aggregate. 40 P.S. § 1301.701(d). Capitalization of the Fund is from surcharges levied by the director upon the health care providers who are entitled to participate. 40 P.S. § 1301.701(e)(1)–(4). The Act also provides that no insurer who provides excess professional liability insurance to a health care provider eligible for coverage by the Fund will be liable for payment of any claim except when it exceeds the Fund's limits. 40 P.S. § 1301.705(a).

The issue to be addressed in this case originated in the settlement of a claim for professional medical malpractice. An examination of the underlying events that led to that settlement is necessary in understanding the contentions of the parties.[2]

1. Act of October 15, 1975, P.L. 390, No. 111 § 101 *et seq., as amended,* 40 P.S. § 1301–101 *et seq.*

2. The facts given are substantially as stated in Ohio Casualty's complaint. Since this case comes to us on appeal from a denial of

In July of 1975, Dr. William H. Davison treated Miss Joyce Mihelic when she was hospitalized for a broken leg which she suffered in a motorcycle accident. She returned to him and he removed her cast in September of that year. Appellee, the Ohio Casualty Group of Insurance Companies (hereinafter Ohio Casualty) alleged in its complaint that Dr. Davison committed malpractice at that time because x-rays disclosed that the leg had not properly knit. She was readmitted to the hospital under Dr. Davison's care because of continuing complaints on November 4, 1975, and after treatment by him was discharged on December 23, 1975. Because of continuing difficulties in her recovery she was again readmitted to the hospital under Dr. Davison's care on July 27, 1976. In the interim the Act became effective on January 13, 1976. On July 28, 1976, Dr. Davison performed surgery on Miss Mihelic's leg during which he removed a condilar plate, installed a femoral plate and performed an osteotomy. Appellee alleged that Dr. Davison committed a second act of malpractice by failing to administer antibiotic spray following that operation, and that his failure led to infection and further complications.

Miss Mihelic sued Dr. Davison for medical malpractice in August of 1978. In 1980, a settlement was proposed to defendant Argonaut, Dr. Davison's basic coverage insurer,[3] in the amount of $145,000. While Argonaut considered the offer Miss Mihelic underwent knee surgery in September of 1981. She later decided to withdraw the settlement offer. Her claim was eventually settled in November 1983 for $455,000. Participating in the settlement were Argonaut and Ohio Casualty. They settled in the amounts of $200,-000 and $255,000 respectively.[4]

In August 1984, Ohio Casualty brought this original action in Commonwealth Court. In its complaint it stated

preliminary objections we assume for purposes of appeal that the facts stated in the complaint are true.

3. Argonaut provided Dr. Davison coverage of $200,000 per occurrence from January 1, 1975 to January 15, 1976 and $100,000 per occurrence and $300,000 in the annual aggregate thereafter.

4. Ohio Casualty was Dr. Davison's excess coverage carrier.

three counts. The first charged Argonaut with failure to perform its duty to Dr. Davison in good faith and with due care by failing to accept the original offer of settlement, thus exposing Ohio Casualty to liability as Dr. Davison's excess insurance carrier. The second count, also against Argonaut, alleged that there were two separate acts of medical malpractice. Therefore, Ohio claimed, Argonaut was required to contribute an additional $100,000 to the settlement as the basic coverage insurance carrier. The third count against Director Judge and the Fund, alleged that because the second act of alleged medical malpractice occurred after January, 1976, i.e., after the effective date of the Act, the Fund was required to contribute to the settlement.

Argonaut answered and entered a motion for partial summary judgment. The Fund in the person of Mr. Judge filed preliminary objections based on Ohio Casualty's alleged failure to exhaust available administrative remedies.

After argument the Commonwealth Court denied Argonaut's motion and overruled appellant's preliminary objections. Appellant then applied for reargument and an amendment of the order. The court denied the former but amended its order to state that the matter involved a controlling question of law as to which there was substantial ground for difference of opinion, and that an immediate appeal from the order might materially advance the ultimate termination of the case, 92 Pa.Cmwlth. 560, 500 A.2d 191. Whereupon appellant petitioned this Court and we granted him allowance to appeal. 42 Pa.C.S. § 702(b).

The appeal presents a single issue: whether an insurer who has paid a claim, allegedly owed by the Fund is barred from bringing an original action for recovery unless he has first sought resolution of his claim through the Fund itself.

In overruling appellant's preliminary objections the Commonwealth Court determined that neither the Act, nor the regulations, specifically provide a procedure for resolution of claims involving the Fund and contending insurance carriers. In addition it determined that the Fund's regula-

tions providing for resolution of complaints of adverse agency action, 31 Pa.Code §§ 242.1–242.20, did not provide an adequate remedy. The court went on to note that although Section 702(f) of the Act, 40 P.S. § 1301–702(f), authorizes the director of the Fund to "defend, litigate, settle or compromise any claim payable by the Fund" the director is not authorized to determine the outcome of such claims. Therefore, relying on this Court's opinion in *Judge v. Allentown and Sacred Heart Hospital Center*, 506 Pa. 636, 487 A.2d 817 (1985), the court concluded that the Fund is subject to original actions and must "defend, litigate, settle or compromise" its position that it is not liable over to Ohio Casualty. *Ohio Casualty Group of Ins. Cos. v. Argonaut Ins. Co.*, 92 Pa.Cmwlth. 560, 567–568, 500 A.2d 191, 194 (1985).

In its appeal before us the Fund has not taken a position that it is not liable over to Ohio Casualty. The gist of its preliminary objection is that the court must stay its hand until the Fund has had an opportunity to exercise discretion as to what course it will take in disposition of Ohio Casualty's claim.

The doctrine of exhaustion of administrative remedies is founded on judicial recognition of the mandate of the legislature that statutorily prescribed remedies are to be strictly pursued.[5] It also is an acknowledgement that an unjustified failure to follow the administrative scheme undercuts the rationale upon which the administrative process is founded; that the technical nature of the subject and the ability of an administrative body to examine it suffice as a matter of public policy to displace preliminary court action. *T. Mendelson Co. Inc. v. Pennsylvania R.R. Co.*, 332 Pa. 470, 474, 2 A.2d 820, 822 (1938). *See, Shenango Valley Osteopathic Hospital v. Department of Health*, 499 Pa. 39, 47, 451 A.2d 434, 438 (1982). Clearly our case law reinforces the rule that a party seeking relief must exhaust available administrative remedies before he may obtain judicial

5. Act of December 6, 1972, P.L. 1339 No. 290, § 3. 1 Pa. C.S.A. § 1504.

review. *Canonsburg General Hospital v. Commonwealth Department of Health,* 492 Pa. 68, 73, 422 A.2d 141, 144 (1980); *Delaware Valley Convalescent Center, Inc. v. Beal,* 488 Pa. 292, 412 A.2d 514 (1980); *Shenango Valley Osteopathic, supra.* However, "[w]here the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required." *Borough of Green Tree v. Board of Property Assessments,* 459 Pa. 268, 279, 328 A.2d 819, 824 (1974), *quoting* L. Jaffe, Judicial Control of Administrative Action 440 (1965). Furthermore, exhaustion will not be required when the administrative process is not capable of providing the relief sought. *See Feingold v. Bell of PA.,* 477 Pa. 1, 383 A.2d 791 (1977); *Borough of Green Tree, supra.*

The basic nature of appellee's complaint is a claim for restitution for its discharge of an alleged statutory liability of the Fund. The Act itself is empty of any specific procedure whereby appellee may be afforded a remedy of restitution. The provisions of the Act are directed to resolving claims brought by injured patients against health care providers. In resolving these claims the Act anticipates the participation of the director and the Fund in the successful completion of such proceedings. The Act does not anticipate, nor was it intended to anticipate, claims brought directly against the Fund which are premised upon the alleged failure of the Fund to complete its statutory duty to pay its share. Such claims place the Fund in the position of defendant, as opposed to its designed position of participant and/or arbiter; and as a defendant the Fund is not in a position to fairly assess its own liability. Thus, recourse to an independent body, in this case the courts, is necessary.

Appellant in its argument before us places great emphasis on the statutorily conveyed power of the director to "defend, litigate, settle, or compromise any claim by the Fund," 40 P.S. § 1301.702(f), and attempts to argue that this power dictates that Ohio Casualty must first formally

present this claim to the Fund before gaining access to the courts. The problem with this position is that the Fund can point to no statutorily prescribed procedure which has been mandated for Ohio Casualty to follow.

Under the doctrine of exhaustion before a litigant can be denied access to the courts there must be a forum available in which he or she can participate. Nebulous claims of informal procedures or implied administrative powers are unavailing since it is clear that without a concrete procedural remedy the litigant could in no way achieve a resolution of his claim except by the grace of the party against whom he is proceeding.

In the context of this case the Fund's argument reduces itself to a simple claim that Ohio Casualty failed to ask for reimbursement prior to running into court. This claim is no different than that of a tort defendant who argues that a plaintiff should be barred his day in court because he failed to send a demand letter. In both cases it would clearly be better practice to first seek informal resolution of the claim, but the failure to follow the better practice does not mean the litigant is precluded from the only enforceable means by which he or she can obtain relief. The rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested. *Feingold*, 477 Pa. at 10, 383 A.2d at 795–796 (citations omitted).

In this case there is no remedy afforded to Ohio Casualty. Therefore, we agree with the Commonwealth Court, on the narrow issue of whether an administrative remedy is provided by the Act in the circumstances of Ohio Casualty's complaint. However, we do not mean to imply that this decision in any way reflects on the merits of the underlying claim.

The record is remanded for further proceedings.

NIX, C.J., concurs in the result.