583 A.2d 872

**The OHIO CASUALTY GROUP OF INSURANCE COMPANIES, Petitioner,**

v.

**ARGONAUT INSURANCE COMPANY, and Thomas J. Judge, Sr., as Director of the Medical Professional Liability Catastrophe Loss Fund of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1990.

Decided Dec. 6, 1990.

Ronald H. Heck, with him, Patrick J. Shannon, Ronald H. Heck and Associates, Pittsburgh, for petitioner.

Robert W. Murdoch, with him, David H. Trushel, Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, for respondents.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

Before us for disposition in our original jurisdiction is a motion for summary judgment filed by Thomas J. Judge, Sr., Director of the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) of the Commonwealth of Pennsylvania.

This case has had a lengthy procedural history which is relevant to our deliberations. Argonaut Insurance Company (Argonaut) was the primary medical malpractice liability carrier for William R. Davison, M.D., with coverage to $200,000 per occurrence in 1975, and Ohio Casualty Group of Insurance Companies (Ohio) was the excess liability carrier with policy limits to $1,000,000. In 1976 Argonaut provided primary coverage for up to $100,000 per occurrence and as of January 13, 1976, the date the law establishing the CAT Fund became effective, the CAT Fund became the excess liability carrier. *See* Section 701(a)(1)(i) of the Health Care Services Malpractice Act, Act of October 15, 1975 P.L. 390, *as amended*, 40 P.S. § 1301.701(a)(1)(i).

In July 1975 one Joyce Mihelic was involved in a serious motorcycle accident. She was provided with emergency medical care by Dr. Davison, who treated her for *inter alia,* a supracondylar fracture of her right femur. He casted her right leg and then removed that cast in September of 1975. Thereafter, she had further complications necessitating additional surgery in July of 1976. Mihelic brought suit against Dr. Davison for medical malpractice alleging, *inter alia,* that he had negligently removed her cast too soon in September 1975 and negligently failed to administer antibiotic post-operative spray in July of 1976.

The case was settled for $455,000. Argonaut paid $200,-000; Ohio paid the remaining $255,000. Ohio then brought suit against Argonaut and the CAT Fund in this Court contending that there had been not one, but two, occurrences (the 1975 cast removal and the 1976 failure to administer post-operative spray) and that it was responsible only for the excess liability arising from the first "occurrence" while the CAT Fund was responsible for excess coverage from the second "occurrence." Under Ohio's theory, Argonaut would be obligated to pay a total of $300,000 ($200,000 for the primary coverage for the 1975 "occurrence" and $100,-000 for the primary coverage for the 1976 "occurrence"). Ohio does not elaborate on the amount of excess liability for which it, as opposed to the CAT Fund, should be liable.

In the context of the Ohio suit, Argonaut filed a motion for partial summary judgment asking this Court to decide as a matter of law that there had been only one occurrence. The CAT Fund filed preliminary objections contending that Ohio had failed to exhaust administrative remedies by filing a formal complaint with the CAT Fund. We held, in an opinion and order filed on November 4, 1985, that on the summary judgment issue the question of whether there had been one occurrence or two was a determination of fact, not law, and hence could not be properly disposed of on a motion for summary judgment. *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Co.*, 92 Pa. Commonwealth Ct. 560, 500 A.2d 191 (1985). Judge Mac-Phail therein stated, "Argonaut has asked this Court as a matter of *law* to determine that there was only one occurrence of medical malpractice when it readily appears that this is a question of fact." *Id.*, 92 Pa.Commonwealth at 565, 500 A.2d at 193 (emphasis in the original).

Thereafter, reargument was sought on the issue of whether we had correctly decided to overrule the CAT Fund's preliminary objection pertaining to the failure to exhaust administrative remedies. Reargument was denied. We did however, grant the CAT Fund's request that we certify our order as an interlocutory one containing a con-

trolling question of law as to which there is substantial ground for difference of opinion. *See* Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b). It is critical to note that, like the request for reargument, the issue for which interlocutory review was sought by the CAT Fund was the failure to exhaust administrative remedies. No party asked that our holding that the number of "occurrences" was a factual issue be appealed. The Supreme Court accepted the interlocutory appeal and decided the sole question certified to it in an order dated May 22, 1987. It remanded the case to our Court for further proceedings. Seven months later, in January 1988 Ohio's "Answer to Request for Admissions" was filed in this Court. Thereafter, the matter remained dormant until we issued a rule to show cause why the case should not be dismissed for want of prosecution. This spurred the litigation forward. Additional pleadings were filed and on March 19, 1990 the CAT Fund filed a motion for summary judgment asking us to rule as a matter of law that there was only one "occurrence."

Case law is legion that absent some new evidence it is improper for a trial judge to overrule an interlocutory order of another trial judge of the same court in the same case. *Reifinger v. Holiday Inns, Inc.*, 315 Pa.Superior Court 147, 461 A.2d 839 (1983); *Commonwealth v. Eck*, 272 Pa.Superior Court 406, 416 A.2d 520 (1979); *see also Commonwealth v. Washington*, 428 Pa. 131, 133, n. 2, 236 A.2d 772, 773 n. 2 (1968) (concerning a pre-trial suppression ruling). In fact, this Court has taken a very strict view of this matter and held that the second trial judge is *without authority* to do so. *Sherman v. Yoder*, 59 Pa.Commonwealth Ct. 430, 430 A.2d 347 (1981).

No new evidence was presented by the CAT Fund. Instead, a single Superior Court case,[1] filed in April of 1986, after we denied reconsideration and amended our order to suggest that an interlocutory appeal be permitted, is cited as the reason to reverse our prior holding. We fail to

---

1. *D'Auria v. Zurich Insurance Co.*, 352 Pa.Superior Ct. 231, 507 A.2d 857 (1986).

understand why the CAT Fund waited until March 19, 1990 to file the instant motion.

In any event, we do not view the Superior Court case as new "evidence," and observe, further that it is not binding precedent on this Court. Moreover, were we to allow the parties to relitigate this issue at this point in time, it could be viewed as encouraging the bar to allow matters to remain dormant in hopes that more favorable case law would eventually come down. Our Supreme Court has indicated that while the prohibition against one trial judge overruling another trial judge's interlocutory orders in the same case is not jurisdictional per se, "it is a rule of sound jurisprudence based on the policy of fostering finality of pre-trial applications so that judicial economy and efficiency can be maintained." *Okkerse v. Howe,* 521 Pa. 509, 517, 556 A.2d 827, 831 (1989).

What is sought here is, in essence, further reconsideration of our 1985 order. We, however, already denied reconsideration of that order in January of 1986.

Based upon the foregoing discussion, the motion for summary judgment is denied.

## ORDER

NOW, December 6, 1990, the CAT Fund's motion for summary judgment is denied.