**Margaret R. CONNOLLY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, and Thomas Callahan, Director, Medical Professional Liability Catastrophe Loss Fund, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1997.

Decided May 5, 1997.

Michael R. Libor, Philadelphia, for petitioner.

B. Craig Black, Harrisburg, for respondents.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Before this court is the Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund's and Thomas Callahan's, as Director of the CAT Fund, (collectively, CAT Fund) Motion for Summary Judgment and Margaret Connolly's (Mrs. Connolly) Cross–Motion for Partial Summary Judgment. For the reasons set forth below, we grant the CAT Fund's Motion for Summary Judgment and deny Mrs. Connolly's Cross–Motion for Partial Summary Judgment.

Mrs. Connolly filed a complaint in our original jurisdiction[1] against the CAT Fund requesting a declaratory judgment that the CAT Fund was required to defend her in an action previously concluded in the United States District Court for the Eastern District of Pennsylvania (District Court) and, because it did not, requesting an award of damages for the costs and attorney's fees she incurred in defending herself.

The underlying action for which Mrs. Connolly is alleging a duty to defend by the CAT Fund was filed in the District Court in 1992. Anthony Semeraro, as executor of the estate of his wife, Lilla Semeraro, brought an action against the estate of Mrs. Connolly's husband, John M. Connolly, Jr., M.D. (Dr. Connolly), his medical practice, which was organized as a professional corporation, and Mrs. Connolly. The Semeraro complaint alleged that Dr. Connolly negligently treated Lilla Semeraro in 1984, while she was suffering from mental and physical problems related to Alzheimer's disease, and that he failed to inform her that she needed follow-up care for cancer, resulting in her death. As to Mrs. Connolly, the Semeraro complaint alleged that she was an employee and corporate officer of the professional corporation. Exhibit A to the Complaint, p. 2, ¶ 5.

Count Six of the Semeraro complaint, the one against Mrs. Connolly, averred as follows:

80. As of July 1987, Defendant [Mrs.] Connolly was aware that her husband, John M. Connolly, Jr., M.D. was suffering from severe mental, physical and visual deficits as a result of what was diagnosed as Alzheimer's Disease.

. . .

82. From June, 1987 through May, 1988, Defendant [Mrs.] Connolly unofficially directed the operation of Dr. Connolly's professional corporation which was the entity through which Dr. Connolly had provided medical services to Lilla L. Semeraro.

83. During that time period, Defendant [Mrs.] Connolly failed to notify any of Dr. Connolly's former patients, including Lilla L. Semeraro, or any physician who had referred patients to Dr. Connolly, of the nature of, severity of and/or duration of Dr. Connolly's disabilities.

84. At all times subsequent to June, 1987, Defendant [Mrs.] Connolly has known and appreciated the manner and extent to which her husband's disabilities compromised his abilities to practice medicine and to perform diagnostic procedures such as colonoscopies and to otherwise properly treat and diagnose colorectal cancer.

85. In or about May, 1988, Defendant [Mrs.] Connolly became an officer and employee of Dr. Connolly' [sic] professional corporation and thereafter officially continued to operate the professional corporation.

. . .

87. At all times subsequent to May, 1988, as an officer and employee of the professional corporation, Defendant [Mrs.] Connolly had an independent affirmative duty to notify Dr. Connolly's former patients, including Plaintiff's Decedent, and their referring physicians of the nature and extent of Dr. Connolly's disabilities while he was practicing medicine.

88. At no time subsequent to May, 1988 has Defendant [Mrs.] Connolly taken

1. *See Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company,* 514 Pa. 430, 433, 525 A.2d 1195, 1197 (1987) (actions against the CAT Fund permitted in the Commonwealth Court in its original jurisdiction).

any action to notify any of Dr. Connolly's former patients, including Lilla L. Semeraro, or any physician who had referred patients to Dr. Connolly, of the nature or, severity of and/or duration of Dr. Connolly's disabilities.

. . .

91. Defendant [Mrs.] Connolly's failure to notify Dr. Connolly's patients, including Plaintiff's Decedent, and their referring physicians of the nature and extent of Dr. Connolly's disabilities while he was practicing medicine, constituted an active, intentional and fraudulent concealment of Dr. Connolly's deficits.

Exhibit A to the Complaint, pp. 17–20.

The CAT Fund defended Dr. Connolly's estate and the professional corporation against the Semeraro action, but notified Mrs. Connolly that it would not be responsible for any damages the professional corporation had to pay based on her actions because the claims against her were not for "professional liability" as required by the Health Care Services Malpractice Act (Malpractice Act), Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§ 1301.101—1301.1006. Ultimately, the CAT Fund settled the Semeraro action obtaining a release for all defendants, including Mrs. Connolly, and paid the entire settlement from CAT Fund monies.

Mrs. Connolly filed the instant action asserting that the CAT Fund had a duty to defend her in the Semeraro action. After the completion of discovery, the CAT Fund filed the instant Motion for Summary Judgment and Mrs. Connolly filed a Cross–Motion for Partial Summary Judgment.

■ Although there is no case law delineating the CAT Fund's duty to defend, the parties agree that general insurance law is germane. The Supreme Court, in *Gene's Restaurant v. Nationwide Insurance Co.,* 519 Pa. 306, 548 A.2d 246 (1988), held:

An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings . . .

. . .

[I]n determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment . . . the language of the policy and the allegations of the complaint must be construed together to determine the insurer's obligation.

quoting 7C J. Appleman, *Insurance Law and Practice* § 4683, at 42, 50 (W. Berdel ed. 1979). The duty to defend is broader than an insurer's duty to provide coverage in that it depends on whether the underlying complaint states a claim that is potentially within the scope of the policy. *Lebanon Coach Co. v. Carolina Casualty Insurance Co.,* 450 Pa. Superior Ct. 1, 675 A.2d 279 (1996).

The CAT Fund contends that the Malpractice Act does not provide coverage unless there is "professional liability", and that there were no allegations amounting to "professional liability" in the Semeraro complaint, which would invoke its duty to defend. Mrs. Connolly counters that Section 605 of the Malpractice Act, 40 P.S. § 1301.605, does not require there be allegations of professional liability to raise the CAT Fund's duty to defend.

Section 605 of the Malpractice Act provides in pertinent part:

In the event that any claim is made against a health care provider subject to the provisions of Article VII more than four years after the breach of contract or tort occurred which is filed within the statute of limitations, such claim shall be defended and paid by the Medical Professional Catastrophe Loss Fund established pursuant to section 701.

While it is true that Section 605 does not specifically limit the duty to defend to allegations of professional liability, Section 605 cannot be read as if standing alone. Because the duty to defend arises only if the insurer would be required to pay a resulting judgment, a court must consider the scope of coverage stated in the policy, or, in this case, the statute.

The scope of coverage by the CAT Fund is set forth in Section 701(d) of the Malpractice

Act, 40 P.S. § 1301.701(d), which provides, in pertinent part:

> There is hereby created a contingency fund for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for *professional liability* . . . (emphasis added).

■ "Professional liability" is not defined in the Malpractice Act; however, "professional liability insurance" is defined as:

> [I]nsurance against liability on the part of a health care provider arising out of any tort or breach of contract causing injury or death resulting from the *furnishing of medical services* which were or should have been provided.

Section 103 of the Malpractice Act, 40 P.S. § 1301.103 (emphasis added). The scope of the CAT Fund's coverage then is limited to the furnishing or the aid in furnishing of medical services.[2]

■ The substance of the allegations against Mrs. Connolly is that she had a duty to notify Lilla Semeraro of the nature and extent of Dr. Connolly's disabilities at the time he was treating her. Mrs. Connolly argues that the allegations concerned the need for Mrs. Semeraro to seek further medical follow-up care and, therefore, are directly related to health care services. To the contrary, the allegation raises a duty merely to inform Lilla Semeraro of Dr. Connolly's condition, not that Mrs. Connolly was able to or had a duty to determine whether follow-up care was needed or even to determine whether Dr. Connolly had negligently treated Lilla Semeraro. These allegations then do not involve the furnishing of medical services and, consequently, do not state a claim for professional liability. Because even if the allegations of the Semeraro complaint against Mrs. Connolly were proven, the CAT Fund would not be liable, the duty to defend did not arise.[3]

Accordingly, summary judgment is appropriate in favor of the CAT Fund.

RODGERS, Senior Judge, dissents.

## ORDER

AND NOW, this 5th day of May, 1997, the Motion for Summary Judgment filed by Respondents Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund and Thomas Callahan, is granted. The Motion for Partial Summary Judgment filed by Petitioner Margaret R. Connolly is denied.

---

2. For the purposes of this argument, we need not address whether the other restraints on coverage apply, that is, that the defendant is a "health care provider entitled to participate in the fund" and that the claims alleged are a tort or a breach of contract under Sections 103 and 701(d) of the Malpractice Act.

3. Based on our holding in the first issue, we need not address the remaining arguments, including that the professional corporation was not covered by the CAT Fund during the period in which the Semeraro complaint alleged Mrs. Connolly had a duty to act.