914 A.2d 477 (2007)
Johanna FLETCHER, Administratrix of the Estate of Timothy Fletcher, Petitioner
v.
PENNSYLVANIA PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIATION and Commonwealth of Pennsylvania, Medical Care Availability and Reduction of Error Fund, Respondents.
Commonwealth Court of Pennsylvania.
Argued November 14, 2006.
Decided January 4, 2007.
Reargument Denied February 2, 2007.
*478 Daniel L. Thistle and Thomas M. Thistle, Philadelphia, for petitioner.
Tawny K. Mummah, Harrisburg, for respondent, Medical Care Availability and Reduction of Error Fund.
BEFORE: SIMPSON, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.
Reargument Denied En Banc February 2, 2007.
OPINION BY Judge SIMPSON.
This original jurisdiction case involves complicated insurance coverage issues for a large medical malpractice judgment, and it requires interpretation of Pennsylvania's recent excess malpractice insurance scheme embodied in the Medical Care Availability and Reduction of Error Act (MCARE Act).[1] The successful plaintiff in *479 the medical malpractice case, Joanna Fletcher (Fletcher), administratrix of the estate of Timothy Fletcher, brought a declaratory judgment action in this Court to resolve the coverage issues. Before us now are the preliminary objections of the MCARE Fund, questioning our original jurisdiction. For the reasons that follow, we overrule the MCARE Fund's preliminary objections.
We glean the following facts from Fletcher's petition for review.[2] The origin of this litigation is an underlying medical malpractice action filed by Fletcher in the Court of Common Pleas of Philadelphia County (court of common pleas) against Kominsky Kubacki Medical Associates and its employee physicians Drs. Solomon Kominsky and Thomas Kubacki. Drs. Kominsky and Kubacki died prior to commencement of the suit; thus, Fletcher's suit named the representatives of the doctors' respective estates as defendants.
In 2005, a jury returned a verdict of $7 million in favor of Fletcher and against the estates of Drs. Kominsky and Kubacki. The court of common pleas molded the verdict to include delay damages for a total award of $7,727,808.20 against the defendants.
According to Fletcher's petition, PHICO Insurance Company (PHICO) insured the physicians, as well as their professional corporation. Because PHICO was placed into liquidation, the Pennsylvania Property and Casualty Insurance Guaranty Association (Guaranty Association)[3] had a statutory obligation to indemnify PHICO's claims. Pet. for Review at SS 25, 30-31. The petition avers the Guaranty Association refused to honor claims made against the physicians' estates. Id. at 25.[4]
The petition alleges the MCARE Fund is the excess carrier under the PHICO policies and, therefore, it is responsible for excess liability beyond the amount paid by the Guaranty Association up to an aggregate amount of $1.2 million for Dr. Kominsky, and up to and including the aggregate amount of $1.2 million for Dr. Kubacki. Id. at 33. The petition alleges the Guaranty Association and the MCARE Fund are also responsible for their proportionate share of delay damages.
In March 2006, Fletcher filed a petition for review in the nature of a declaratory judgment action against the MCARE Fund and the Guaranty Association. Essentially, the petition seeks a declaration that the Guaranty Association is obligated to pay $300,000 per claim and a share of *480 delay damages, and the MCARE Fund is obligated to pay excess coverage of $1.2 million and its share of delay damages. According to the petition, the estates of Drs. Kominsky and Kubacki assigned their rights to Fletcher to pursue claims against PHICO, the Guaranty Association and the MCARE Fund.
The MCARE Fund filed preliminary objections asserting that since enactment of the MCARE Act, this Court lacks jurisdiction over the petition for review, and Fletcher failed to exhaust her administrative remedies by first seeking relief with the Insurance Department.[5] The Guaranty Association filed an answer and new matter.
After argument in July 2006, a single judge of this Court issued an opinion and order sustaining the MCARE Fund's preliminary objections. Based on the changes to the MCARE Act, he determined, the Insurance Department, rather than this Court, had original jurisdiction over this action. Therefore, he transferred the action against the MCARE Fund to the Insurance Commissioner. As to the remaining defendant, the Guaranty Association, he noted resolution of the MCARE Fund's preliminary objections did not relate to claims against the Guaranty Association, which is not itself a state agency subject to this Court's original jurisdiction. See Greenfield v. Pa. Ins. Guar. Ass'n, 24 Pa. Cmwlth. 127, 353 A.2d 918 (1976). Thus, he transferred the action against the Guaranty Association to the court of common pleas.
About a week later, Fletcher filed an application for reargument, which was granted. As a result, the order sustaining the MCARE Fund's preliminary objections was stayed pending reargument.[6] The MCARE Fund's preliminary objections are once again before this Court for disposition.
The MCARE Fund argues this Court lacks original jurisdiction over this action because the Insurance Department now possesses exclusive subject matter jurisdiction over the MCARE Fund's written determinations. It asserts this Court properly exercised original jurisdiction over its predecessor, the CAT Fund;[7] however, the MCARE Act transferred the Fund within the purview of the Insurance Department and, in so doing, relieved this Court of its original jurisdiction.
The MCARE Fund contends that the CAT Fund was an executive agency with a Director appointed by the Governor. In contrast, the MCARE Fund is administered by the Insurance Department. Although this Court previously exercised *481 original jurisdiction over the CAT Fund, such jurisdiction was necessary because the CAT Fund was a "stand alone," executive agency without a formal administrative hearing process.
The MCARE Fund's argument continues as follows. As a result of the statutory mandate placing the MCARE Fund within the purview of the Insurance Department, the MCARE Fund's written determinations, like all other Insurance Department determinations, are appealed to the Department's Administrative Hearings Office and then to the Insurance Commissioner. It maintains such adjudications may then be appealed to this Court in its appellate jurisdiction.
Further, where exclusive jurisdiction is vested in a state agency, this Court generally lacks original jurisdiction. Here, the Insurance Department's Administrative Hearings Office is a tribunal other than a court, and Fletcher does not raise any challenges that would divest that tribunal of jurisdiction.
Fletcher responds this Court continues to possess exclusive jurisdiction over disputes involving MCARE Fund coverage just as it did for CAT Fund coverage. She asserts the MCARE Act contains many of the same provisions of the former Malpractice Act, and no provision absolves this Court of its original jurisdiction over coverage disputes.
Fletcher also points out, although Section 712(d)(3) of the MCARE Act, 40 P.S. § 1303.712(d)(3), expressly provides for administrative appeals of assessments to the Insurance Department, the Act is silent as to administrative appeals involving coverage issues. Under the principle of statutory construction expresio unius est exclusio alterius (the mention of one thing in a statute implies the exclusion of others not expressed), the MCARE Act's failure to include an express administrative appeal provision for coverage disputes implies none was intended and, as such, the legislature intended these disputes remain in this Court's original jurisdiction.
At the outset, a brief explanation of the background of the Malpractice Act, which created the CAT Fund, the MCARE Fund's predecessor, is helpful. In Milton S. Hershey Medical Center of the Pennsylvania State University v. Medical Professional Liability Catastrophe Loss Fund, 573 Pa. 74, 821 A.2d 1205 (2003), our Supreme Court provided an overview of the history and purposes of the Malpractice Act, stating:
The General Assembly enacted the [Malpractice Act] in October of 1975 in response to a crisis in the field of medical malpractice insurance marked by dramatic increases in the cost of insurance and the specter of its unavailability. . . .
The Pennsylvania General Assembly responded to this "crisis" by enacting the [Malpractice] Act. Its stated purpose is "to make available professional liability insurance at a reasonable cost. . . ." It implements this policy by . . . limiting the dollar amount of liability insurers on individual awards. This limitation is achieved by the creation of [the CAT Fund], established by a surcharge on insurance premiums. . . . The [CAT Fund] is guaranteed by requiring that all health care providers as defined by the [Malpractice] Act either purchase insurance or develop a plan of self-insurance. . . .
According to this legislative history, the purpose of the [Malpractice Act] was to reduce the cost of primary insurance rates by creating a fund to pay claims that are more than "the basic medical malpractice insurance policy carried by a health care provider." The General *482 Assembly financed the [CAT] Fund by requiring all health care providers to obtain a minimum level of insurance and assessing a fee on every medical malpractice insurance premium procured in the Commonwealth.
Id. at 82-84, 821 A.2d at 1210-11 (citations omitted).
On March 20, 2002, the General Assembly repealed the Malpractice Act and replaced it with the MCARE Act. The MCARE Act replaced the CAT Fund with the MCARE Fund, which was created to handle malpractice claims against participating health care providers. The MCARE Fund is funded by an annual assessment on each participating provider. Of further note, the MCARE Act established the MCARE Fund as a special fund within the State Treasury. 40 P.S. § 1303.712(a). The MCARE Act also states the MCARE Fund shall be administered by the Insurance Department. Section 713(a) of the MCARE Act, 40 P.S. § 1303.713(a).
As to the issues of jurisdiction and exhaustion of remedies raised by the MCARE Fund's preliminary objections, Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Company, 92 Pa.Cmwlth. 560, 500 A.2d 191 (1985), aff'd, 514 Pa. 430, 525 A.2d 1195 (1987), is instructive. We therefore discuss it in detail. In Ohio Casualty, this Court considered whether actions against the CAT Fund seeking declaratory relief were properly brought in this Court's original jurisdiction or whether the doctrine of exhaustion of remedies barred such actions.
There, an insurer, who paid a claim allegedly owed by the CAT Fund, brought an original jurisdiction action in this Court seeking recovery. The CAT Fund filed a preliminary objection asserting the insurer failed to exhaust its administrative remedies through the CAT Fund and was therefore barred from bringing an original jurisdiction action. The CAT Fund asserted the General Rules of Administrative Practice and Procedure, 1 Pa.Code Part II, applicable to the "activities of and proceedings before" the CAT Fund by virtue of the Fund's regulations, provided a detailed procedure by which the insurer should have first filed a formal complaint with the CAT Fund.
Overruling the CAT Fund's preliminary objection, this Court stated neither the Malpractice Act nor the CAT Fund's regulations set forth an express procedure for resolution of claims between the Fund and insurance carriers. The Court stated such matters were not within the CAT Fund's specialized knowledge, but raised factual issues appropriate for an impartial fact-finder. The Court also noted, although Section 702(f) of the Malpractice Act authorized the Director of the CAT Fund to "defend, litigate, settle or compromise any claim payable by the Fund," the Director was not authorized to determine the outcome of such claims. See Section 702(f) of the Malpractice Act, formerly 40 P.S. § 1301-702(f). Rather, this statutory language implied the CAT Fund would be involved in litigation concerning such claims.
Our Supreme Court affirmed, stating:
The basic nature of [the insurer's] complaint is a claim for restitution for its discharge of an alleged statutory liability of the [CAT] Fund. The [Malpractice] Act itself is empty of any specific procedure whereby [the insurer] may be afforded a remedy of restitution. The provisions of the [Malpractice] Act are directed to resolving claims brought by injured patients against health care providers. In resolving these claims the [Malpractice] Act anticipates the participation of the [D]irector and the [CAT] Fund in the successful completion of *483 such proceedings. The [Malpractice] Act does not anticipate, nor was it intended to anticipate, claims brought directly against the [CAT] Fund which are premised upon the alleged failure of the [CAT] Fund to complete its statutory duty to pay its share. Such claims place the [CAT] Fund in the position of defendant, as opposed to its designed position of participant and/or arbiter; and as a defendant the [CAT] Fund is not in a position to fairly assess its own liability. Thus, recourse to an independent body, in this case the courts, is necessary.
[The CAT Fund] in its argument before us places great emphasis on the statutorily conveyed power of the [D]irector to "defend, litigate, settle, or compromise any claim by the Fund," 40 P.S. § 1301.702(f), and attempts to argue that this power dictates that [the insurer] must first formally present this claim to the [CAT] Fund before gaining access to the courts. The problem with this position is that the [CAT] Fund can point to no statutorily prescribed procedure which has been mandated for [the insurer] to follow.
514 Pa. at 436-37, 525 A.2d at 1198.
Here, despite the minor distinctions between the Malpractice Act and the MCARE Act highlighted by the MCARE Fund, Ohio Casualty remains controlling. Several reasons support our conclusion.
First, because the MCARE Act makes no specific provision for resolution of coverage disputes, we resort to principles of statutory construction. The MCARE Act was enacted long after the Supreme Court's decision in Ohio Casualty; therefore, the legislature is presumed to have acted with knowledge of that decision. See Fonner v. Shandon, Inc., 555 Pa. 370, 724 A.2d 903 (1999); Tri-County Indus., Inc. v. Dep't of Envtl. Prot., 818 A.2d 574 (Pa.Cmwlth.2003).
The legislature's silence on resolution of MCARE coverage disputes with the presumed knowledge of Ohio Casualty leads to the conclusion that the legislature did not intend a change in jurisdiction. As our Supreme Court explained:
When confronted with questions of statutory construction, the words of a statute are to be interpreted in light of antecedent case law, and the legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication. The failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment.

Fonner 555 Pa. at 377-78, 724 A.2d at 906 (citations omitted) (emphasis added). Thus, we presume the legislature did not intend to change existing law by omission or implication; rather, we presume a change of law to be affected by an express provision. The absence of express provision for resolution of MCARE coverage disputes supports the interpretation that no change in existing law was intended.
In addition, the similarity of authorized powers between the former and current statutes supports the conclusion that no change was intended. Thus, the former Malpractice Act authorized the Director of the CAT Fund "to defend, litigate, settle or compromise any claim payable by the [CAT][F]und." Similarly, the MCARE Act states the Insurance Department may "defend, litigate, settle or compromise any medical professional liability claim payable by the [MCARE] [F]und." Section 714(d) of the MCARE Act, 40 P.S. § 1303.714(d). The acts authorized by both provisions are identical. Consequently, the limitations *484 implicit in the language is also identical. Therefore, we conclude that the Insurance Department, like the former Director of the CAT Fund, will be involved in the litigation of claims against the MCARE Fund rather than determining their outcome. Ohio Casualty.[8]
Finally, in Ohio Casualty, our Courts stated the General Rules of Administrative Practice and Procedure and the CAT Fund's regulations did not provide an adequate administrative framework to challenge the CAT Fund's denial of coverage. It is noteworthy that, despite the repeal of the Malpractice Act and the enactment of the MCARE Act, these regulations were left largely unaltered. See 31 Pa.Code §§ 242.1-242.20. Thus, there is still no adequate regulatory procedure to resolve a coverage dispute with the MCARE Fund.
This conclusion is amply supported by the result sought by the MCARE Fund. Although Fletcher's claims against the MCARE Fund and the Guaranty Association are clearly related, Fletcher must pursue them separately, in two different forums. Thus, the MCARE Fund argues that Fletcher must seek relief against the MCARE Fund in administrative proceedings in Harrisburg while simultaneously seeking relief against the Guaranty Association in the court of common pleas having venue. The duplication of litigation and the possibility of inconsistent outcomes is an absurd result which we presume the legislature did not intend.
In sum, the statutory changes made by virtue of the repeal of the Malpractice Act and the enactment to the MCARE Act are too superficial to distinguish our Supreme Court's decision in Ohio Casualty so as to divest this Court of its original jurisdiction over coverage disputes involving the MCARE Fund. Accordingly, we overrule the MCARE Fund's preliminary objections.[9]

ORDER
AND NOW, this 4th day of January, 2007, the Medical Care Availability and Reduction of Error Fund's preliminary objections to the petition for review seeking declaratory judgment are OVERRULED.
Respondent Medical Care Availability and Reduction of Error Fund shall file an answer to the petition for review within 30 days of this date.
Dissenting Opinion By Senior Judge KELLEY.
I respectfully dissent.
In general, as this Court has previously noted:
[T]he Insurance Commissioner is charged with primary responsibility to resolve insurance questions. See generally, Metropolitan Property and Liability Insurance Company v. Insurance Commissioner, 517 Pa. 218, 229, 535 A.2d 588, 594 (1987). Where, as here, the statutory scheme is complex, the *485 reviewing court must be cautious in substituting its discretion for that of the administrative agency. Graduate Health Systems v. Pennsylvania Insurance Department, 674 A.2d 367 (Pa. Cmwlth.1996). Deference is accorded the decisions of the Commissioner, since the Commissioner has been afforded broad supervisory powers to regulate the insurance business in this Commonwealth, including the power to protect "the interests of the insureds, creditors, and the public generally. . . ." 40 P.S. § 221.1(c)[1], Foster v. Mutual Fire Insurance, 531 Pa. 598, 614 A.2d 1086 (1992), cert. denied, [506 U.S. 1080, 113 S.Ct. 1051, 122 L.Ed.2d 356 (1993)]. . . .
Nationwide Insurance Company v. Pennsylvania Insurance Department, 779 A.2d 14, 18 (Pa.Cmwlth.2001).
Section 713(a) of the Medical Care Availability and Reduction of Error Act (MCARE Act)[2], provides, in pertinent part, that "[t]he [MCARE] fund shall be administered by the [Insurance Department]. . . ."[3] In this regard, the Insurance Commissioner has publicly explained that:
Effective October 1, 2002, the [MCARE Act] establishes the [MCARE Fund] as a special fund within the State Treasury. The [MCARE] Fund will be administered by the Insurance Department (Department). Timely appeals of written determinations made by the [MCARE] Fund will be subject to the formal administrative hearings process of the Department. Appeals shall be governed by 2 Pa.C.S. §§ 501-508 and 701-704 (relating to the Administrative Agency Law), 1 Pa.Code Part II (relating to General Rules of Administrative Practice and Procedure) and 31 Pa.Code §§ 56.1-56.3 (relating to Special Rules of Administrative Practice and Procedure).
An aggrieved party that disputes a written determination by the [MCARE] Fund may request, in writing, a formal administrative hearing before the Insurance Commissioner. The written determination by the [MCARE] Fund shall advise how to timely request a hearing before the Insurance Commissioner.
32 Pa. Bull. 4553 (2002). In accord with the foregoing, the MCARE Fund has issued a Final Determination in this case regarding the relevant coverage issues, and has outlined how Fletcher could have appealed that determination within the Insurance Department. See Brief and Reproduced Record in Support of Petitioner's Response to the Preliminary Objections of Respondent at 53a-55a.
Thus, there was an adequate and available administrative remedy to resolve the relevant coverage issues of this case.[4] As a result, the Majority's reliance upon Ohio *486 Casualty Group of Insurance Companies v. Argonaut Insurance Company, 514 Pa. 430, 525 A.2d 1195 (1987), is misplaced, and the instant petition for review should be dismissed based on Fletcher's failure to exhaust this adequate and available administrative remedy.
Accordingly, unlike the Majority, I would sustain the MCARE Fund's preliminary objections and dismiss Fletcher's petition for review with prejudice.
NOTES
[1] Act of March 20, 2002, P.L. 154, as amended, 40 P.S. §§ 1303.101-1303.910. Pursuant to the MCARE Act, the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) became known as the MCARE Fund. The MCARE Fund is the successor-in-interest to the CAT Fund. It is a statutory excess carrier that provides additional excess medical malpractice insurance coverage to the extent a health care provider's liability exceeds its basic coverage in effect at the time of an occurrence. Gabroy v. Commonwealth, 886 A.2d 716 (Pa. Cmwlth.2005).
[2] "We are mindful that in reviewing preliminary objections, only facts that are well-pleaded, material and relevant will be considered as true; only such reasonable inferences as may be drawn from these facts may be admitted; that conclusions of law, argumentative allegations, expressions of opinion and unreasonable inferences will not be admitted; and preliminary objections will only be sustained if they are clear and free from doubt." Ohio Cas. Group of Ins. Cos. v. Argonaut Ins. Co., 92 Pa.Cmwlth. 560, 500 A.2d 191, 194 (1985), aff'd, 514 Pa. 430, 525 A.2d 1195 (1987).
[3] The Guaranty Association was created by the Act of December 12, 1994, P.L. 1005, as amended, 40 P.S. §§ 991.1801-991.1820 (Guaranty Association Act), to provide a means of paying covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to prevent claimants or policyholders from incurring financial loss as a result of an insurer's insolvency. Gabroy.
[4] However, Fletcher's brief states the Guaranty Association later acknowledged partial responsibility for the claims by tendering $300,000 less the applicable statutory set-offs. Petitioner's Br. at 5.
[5] In May 2006, while its preliminary objections were pending, the MCARE Fund issued Fletcher a letter rejecting coverage and informing her she could file an administrative appeal within 30 days. Reproduced Record (R.R.) at 53a-54a. No administrative appeal was filed while the preliminary objections were pending. In its brief to this Court, however, the MCARE Fund indicates it is willing to extend the appeal period until 15 days after the Court rules on its preliminary objections. See Respondent's Br. at 4, n. 1.
[6] The order also permitted the Guaranty Association to file a brief on the jurisdiction issue. The Guaranty Association filed a brief stating it takes no position on the issue of jurisdiction over Fletcher's claim against the MCARE Fund. However, the Guaranty Association also asserts, if it is the only remaining defendant, this Court lacks jurisdiction over the case because it is not a state agency. Greenfield.
[7] The Medical Professional Liability Catastrophe Loss Fund (CAT Fund) was established by the former Health Care Services Malpractice Act (Malpractice Act), Act of October 15, 1975, P.L. 390, formerly 40 P.S. §§ 1301.101-1301.1006, repealed by the Act of March 20, 2002, P.L. 154.
[8] Further, as noted by the MCARE Fund, Section 713(a) of the MCARE Act states the MCARE Fund "shall be administered by the [D]epartment." 40 P.S. § 1303.713(a) (emphasis added). However, this language is quite similar to that used in the former Malpractice Act. Indeed, former Section 702(a) of the Malpractice Act stated the CAT Fund "shall be administered by a director. . . ." Formerly 40 P.S. § 1301.702(a). While the term "administered" in the former Malpractice Act was not interpreted to confer adjudicatory power on the CAT Fund's Director, we believe the continued use of that term in the MCARE Act is not, by itself, sufficient to confer decision-making authority on the Department.
[9] Based on our disposition of the MCARE Fund's preliminary objections, we need not address Fletcher's alternative argument that we should reject the MCARE Fund's position based on the doctrine of laches.
[1] Section 501(c) of the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, as amended, added by Section 2 of the Act of December 14, 1977.
[2] Act of March 20, 2002, P.L. 154, No. 13, as amended, 40 P.S. § 1303.713(a)
[3] See also Section 712(d) of the MCARE Act which provides, in pertinent part:

(1) For calendar year 2003 and for each year thereafter, the [MCARE Fund] shall be funded by an assessment on each participating health care provider. . . .
(2) The department shall notify all basic insurance coverage insurers and self-insured participating health care providers of the assessment by November 1 for the succeeding calendar year.
(3) Any appeal of the assessment shall be filed with the department.
40 P.S. § 1303.712(d).
[4] As this Court has previously noted:

The courts of this Commonwealth have long held that a party challenging administrative decision-making must first exhaust administrative remedies before seeking judicial review; where such remedies exist, courts lack jurisdiction. This doctrine is not inflexible, and it is not applied where administrative remedies are not available or are not adequate. A remedy is not adequate if it does not allow for adjudication of the issue raised or if it permits irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy. In addition, exhaustion has not been required in some cases . . . where pursuit of an existing remedy would be futile. . . .
Pennsylvania Pharmacists Association v. Department of Public Welfare, 733 A.2d 666, 672 (Pa.Cmwlth.1999) (citations omitted).